## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**ROBERT SOFALY,**                                  *Electronically filed*

  *Plaintiff,*                                      **Case No.: 2:23-cv-02018-CB**

  **v.**

**PORTFOLIO RECOVERY**                               **MEMORANDUM OF LAW**
**ASSOCIATES, LLC,**

  *Defendant.*


**DAMIEN MALCOLM,**                                  *Electronically filed*

  *Plaintiff,*                                      **Case No.: 2:24-cv-00053-CB**

  **v.**

**PORTFOLIO RECOVERY**                               **MEMORANDUM OF LAW**
**ASSOCIATES, LLC,**

  *Defendant.*

**J.P. WARD & ASSOCIATES, LLC**
Joshua P. Ward
Pa. I.D. No. 320347
Travis Gordon
Pa. I.D. No.
J.P. Ward and Associates, LLC
201 South Highland Ave. Suite 201
Pittsburgh, PA 15206

Telephone:     (412) 545-3015
Fax No.:       (412) 540-3399
E-mail:jward@jpward.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ 3

NATURE OF THE DISPUTE ...................................................................... 5

PROCEDURAL HISTORY .......................................................................... 7

FACTUAL HISTORY .................................................................................. 9

STANDARD OF REVIEW ......................................................................... 19

QUESTIONS PRESENTED ........................................................................ 20

ARGUMENT .............................................................................................. 21

      I.     **The Purpose of the FDCPA and Prohibition on Failing to
Communicate the Disputed Nature of a Consumer Debt to
the Credit Bureaus** ........................................................................ 21

     II.     **The Attorneys had Proper Agency and Express Authorization
from the Clients to Send the Dispute Letters** ................................... 25

     III.    **The Contents of the Dispute Letter Constitute a Valid
Dispute Under 1692e(8)** ...................................................... 26

     IV.    **The Attorneys Brought the Lawsuits in Good Faith and Not
in a Scheme to Abuse the FDCPA or the Defendant** ....................... 28

     V.    **Caselaw Suggests that the Conduct of the Attorneys was
Proper and Ethical** ........................................................................... 29

     VI.    **The Attorneys did not Violate the Model Rules of
Professional Conduct** ........................................................................ 31

CONCLUSION ............................................................................................ 32

## TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Brady v. Credit Recovery Co., Inc.*,
    160 F.3d 64 (1st Cir. 1998).................................................................22, 26

*Brown v. Card Serv. Ctr.*,
    464 F.3d 450 (3d Cir. 2006)............................................................. 21

*Conboy v. United States Small Bus. Admin.*,
    992 F.3d 153 (3d Cir. 2021)............................................................. 21

*Dixon v. RJM Acquisitions, LLC*,
    640 F.App'x 793 (10th Cir. 2016)..................................................... 27

*Est. of Torsiello ex rel. Torsiello v. McGovern Legal Servs., LLC*,
    WL 4758024 (D.N.J. Sept. 24, 2014)............................................... 22

*Evans v. Portfolio Recovery Assocs., LLC*,
    889 F.3d 337 (7th Cir. 2018)..........................................5, 14, 15, 16, 23, 26, 27

*Francisco v. Midland Funding, LLC*,
    Case No. 17 C 6872 (N.D. Ill. Feb. 8, 2019) .........................................5, 16, 27

*Graziano v. Harrison*,
    950 F.2d 107 (3d Cir. 1991)..............................................................6, 21

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
    559 U.S. 573 (2010) ..................................................................... 28

*Jones v. Portfolio Recovery Assocs., LLC*,
    2017 WL 7052288 (W.D. Tex. Aug. 16, 2017) .........................................28, 29

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998)............................................................ 22

*McCartney v. First City Bank*,
    970 F.2d 45 (5th Cir. 1992)............................................................. 22

*Sayles v. Advanced Recovery Sys., Inc.*,
    865 F.3d 246 (5th Cir. 2017)............................................................ 23

*Stroh v. Director, OWCP*,
    810 F.2d 61 (3d Cir. 1987)............................................................. 21

*Tejero v. Portfolio Recovery Assocs., LLC*,
  955 F.3d 453 (5th Cir. 2020)..............................................................24, 28, 30, 31

*Walton v. Johnson*,
  66 A.3d 782 (Pa. Super. Ct. 2013) ...............................................................25

*Weiss v. Regal Collections*,
  385 F.3d 337 (3d Cir. 2004)......................................................................6, 21


Federal Statutes

15 U.S.C. § 1692.........................................................................................21, 22


Other Authorities

Stipulated Final Judgment and Order,
  *CFPB v. Portfolio Recovery Assocs., LLC*,
  No. 2:23-cv-110 (E.D. Va. Apr. 13, 2023), ECF No. 10...........................23, 24


In-Person Hearing,
  3:1-71:7, February 20, 2024 ....................................5, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18

## PLAINTIFF'S MEMORANDUM OF LAW REGARDING IN PERSON HEARING

AND NOW, comes Plaintiff, Robert Sofaly, by and through the undersigned counsel, J.P. Ward & Associates, and specifically Travis Gordon, Esq., and filed the within Memorandum of Law, of which the following is a statement.

## I.     NATURE OF THE DISPUTE

The present dispute surrounds a *sua sponte* "in-person hearing" wherein this Honorable Court conducted a "fact finding" hearing to determine whether Attorneys Ward and Gordon are engaged in widespread wrongdoing and fraud, arising out of an aspect of their FDCPA e(8) practice, by engaging in a "scheme" to abuse the FDCPA and commit all manner of illegal acts. (Tr. 33:2, 54:4).   As a matter of procedural and substantive due process, Attorneys Ward and Gordon strenuously requested an opportunity to file a brief to publicly address these accusations following the hearing on February 20, 2024.   There are crucial facts that were not discussed or disclosed at the "fact finding" hearing.

In short, Attorneys Ward and Gordon, herein, intend to demonstrate that it is well-settled law that their business practices are legal, proper, and for the public good.  See *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 461 (5th Cir. 2020) (holding that district court abused discretion in sanctioning FDCPA lawyers in nearly identical matter)[1]; see also, *Evans v. Portfolio Recovery Assocs.*, LLC, 889 F.3d 337, 347 (7th Cir. 2018); *Francisco v. Midland Funding, LLC, No*. 17 C 6872, 2019 WL 1227791, at *3 (N.D. Ill. Mar. 15, 2019) (curating cases from around the country where the defense of "unclean hands" has been roundly

---

[1] It is noteworthy that despite an issuance of sanctions, and a disciplinary referral from the judge, accused attorney has no disciplinary history noted publicly.  In the appellate brief, the accused attorney represented that "The Committee had found that Plaintiffs' attorneys were not involved in any scheme to abuse the FDCPA, and had exonerated Plaintiffs' counsel of this charge." Case: 18-50661 W.D. Tex. Document: 00514831042 Page: 21 Date Filed: 02/11/2019.

rejected in FDCPA e(8) claims); but see, *Alcivar v. Enhanced Recovery Co.*, No. 17-CV-2275 (ILG), 2020 WL 2559845, at *3 (E.D.N.Y. May 20, 2020) (district court appropriately sanctioning FDCPA e(8) attorneys that exceeded scope of proper agency, avoided deposition, failed to disclose agency, failed to attend status conference for fact finding); see also, *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir.2004).; see also *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir.1991) (The FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general").

## II.   **PROCEDURAL HISTORY**

J.P. Ward & Associates filed an FDCPA Complaint against the Defendant for Mr. Sofaly and Mr. Malcolm in the Court of Common Pleas of Allegheny County at docket numbers AR-23-005073 and AR-23-006161, respectively. Defendant, by and through counsel, Attorney Lauren Burnette, removed these cases to this Honorable Court at docket numbers 2:23-cv-02018-CB and 2:24-cv-00053-CB, respectively. The Parties diligently completed the 26(f) process, selected a mediator, and attended the ICMC for Mr. Sofaly on February 8, 2024.

At this ICMC, Attorney Gordon appeared for Mr. Sofaly and Attorney Shultz appeared for the Defendant. Attorney Gordon was asked by Judge Bissoon about the origins of the 1692e(8) dispute letter, where Attorney Gordon freely informed the Court and Attorney Schultz that J.P. Ward & Associates, with express authorization and agency from Mr. Sofaly, was the author of the letter. Following that disclosure, this Honorable Court ordered an in-person hearing for both Mr. Sofaly and Mr. Malcolm.

In anticipation of the substance for the in-person hearing and in an attempt to satisfy this Court's inquiry, Attorney Gordon and Attorney Ward drafted a letter to Judges chambers regarding the 1692 e(8) dispute letter. (See Exhibit 1). Attorney Gordon disclosed that J.P. Ward & Associates had the express authorization and agency from the clients to draft these letters, had experience in prior cases with this process, always disclosed the origin of dispute letters drafted by third parties in cases with Attorney Burnette, and provided the Court with the clients' representation agreements (See Exhibit 2 and 3). This Court then issued another order, requiring an in-person hearing with all staff and paralegals from J.P. Ward & Associates who worked on these cases to appear in-person as well.

In another effort for transparency, Attorney Gordon filed Amended Complaints in each

case specifically disclosing J.P. Ward & Associates authorship of the 1692e(8) dispute letter. Although, Attorney Gordon was doubtful that was truly necessary, but rather, done out of an abundance of caution.   Indeed, there is nothing about the authorship of the letter that would give rise to a defense, and the agency would certainly be disclosed during the litigation in any of these matters.   J.P. Ward & Associates maintained that the Complaint as filed was likely proper, did not violate any ethical rules, and may not strictly not require an amendment.

The Parties attended the in-person hearing on February 20, 2024. At the end of the hearing, this Honorable Court, for the first time, notified Attorney Ward and Attorney Gordon that the purpose of the hearing was a fact-finding hearing to determine whether the conduct of J.P. Ward & Associates violated Rules 3.1, 3.3, 3.4(b), and 8.3 of the Model Rules of Professional Conduct. (Tr. 67:11-68:15) The hearing culminated in this Honorable Court granting J.P. Ward and Associates' multiple urgent requests to file a Brief regarding this instant dispute on or before March 1, 2024, and placing an administrative stay on both of the cases.

### III.     FACTUAL BACKGROUND / MATERIAL FACTS

#### A.  Pre-Hearing Procedural History

Mr. Sofaly and Mr. Malcolm retained J.P. Ward & Associates to assist in defending against debt collection lawsuits in 2022 and 2023. During the Spring/Summer of 2023, J.P. Ward & Associates was exploring and testing a new program in the Firm's already robust debt defense and FDCPA practice area: third-party creditor disputes. Mr. Sofaly and Mr. Malcolm were some of the first clients to sign up for this program. Attorney Gordon advised them that the Firm had identified other debt collection agencies' tradelines on his credit report. Afterwards, Mr. Sofaly and Mr. Malcolm confirmed that it was their intention to retain the Firm to dispute these debts. In consultations with Mr. Sofaly and Mr. Malcolm, Attorney Gordon explained the process. Specifically, Attorney Gordon advised that J.P. Ward & Associates would draft a handwritten 1692e(8) dispute letters, sufficiently disputing the debts, styled as though it was submitted by Mr. Sofaly and Mr. Malcolm, affix their signatures, and mail the 1692e(8) dispute letter to the creditors. The "Agreement For Credit Audit and Repair" states under paragraph 3:

> AGENCY: Client agrees to give Law Firm Agency to use their personal information in processing disputes to the Third-Party Creditors, including agency to send handwritten letters to the Third-Party Creditors, styles as though they were sent form the Client.

(Exhibit 2).

Attorney Gordon mailed the disputes to Defendant, PRA. Under the FDCPA and the controlling case law, the dispute letter sufficiently and specifically disputed the debts in question. PRA received the dispute letter and failed to correctly communicate the disputed nature of the debt to the Credit Reporting Agencies. PRA does not dispute any of these facts.

After confirming PRA's errors, J.P. Ward & Associates notified Mr. Sofaly and Mr.

Malcolm of the violation. Once again, Attorney Gordon and his staff advised Mr. Sofaly and Mr. Malcolm on the process of asserting their consumer rights in an FDCPA claim against PRA. Once again, Mr. Sofaly and Mr. Malcolm executed a representation agreement authorizing J.P. Ward & Associates to file the claim against PRA.

Following submission of pleadings under Rule 26, this Honorable Court conducted an Initial Case Management conference on February 8, 2024. At this ICMC, Attorney Gordon voluntarily disclosed the fact that J.P. Ward & Associates was the author of the despite letter. At the recent in-person hearing, Attorney Burnette stated that she believed the dispute letter came from a credit repair organization. (Tr. 54:17-18). As the Parties had little notice of the hearing and time to review the record, to no fault of Attorney Burnette, her statement was not entirely accurate.

Attorney Gordon set up a call with Attorney Burnette to disclose the authorship of the dispute letter on February 1, 2024. In an email Attorney Gordon stated that he wanted "to have a quick phone call to discuss what's going on here, *it's a little different than the AIM credit disputes that we mediated last time*." (emphasis added) (See Exhibit 4). Unfortunately for Attorney Gordon, Attorney Burnette was unable to make that scheduled phone call as she was busy at a conference. Clearly had this phone call occurred, some of this Court's concerns would have been alleviated. Nonetheless, Attorney Gordon's actions indicate that he did not harbor any intent to withhold the identity of the authorship of the dispute letter. Further, Attorney Burnett's actions indicate that she was not too concerned with the authorship of the letter, as she has seen this issue before, never alleging any improper conduct or ethical violations.

Indeed, in the past, J.P. Ward & Associates had worked with a credit repair organization, AIM Financial, LLC (hereinafter "AIM"). AIM, among other services, would draft and send 1692e(8) dispute letters on behalf of their clients after obtaining their clients' express authority

and agency. On a few occasions, if AIM discovered an FDCPA violation, AIM would forward those cases to J.P. Ward & Associates for review and prosecution. On at least one occasion, Attorney Gordon litigated one such case with Attorney Burnette. On that occasion, Attorney Gordon rushed to deliver Plaintiff's discovery responses prior to their due date, so that Attorney Burnette would have sufficient information for a productive ENE. There, Attorney Gordon provided full disclosures regarding the authorship of the dispute letter as well as the relationship between AIM and the client. The case was settled on mutually agreeable terms following the ENE. Neither Attorney Burnette, the defendant in that case, nor the Judge ever raised concerns about improper conduct or ethical violations in that case.

### B. Summary of In-Person Hearing

This Honorable Court ordered the in-person 'fact-finding' hearing.  At the outset, the Court remarked that "attorney misconduct occurring during the pendency of a case assigned to a judge of this court may be subject to attorney discipline and sanctions and other consequences in the case, as well as a separate attorney disciplinary proceeding before the court." (Tr. 4:14-18 (J. Bisson))[2]. This Honorable Court followed by Mirandizing the plaintiff's attorneys, the plaintiff's, two paralegals, and two support staff members. (Tr. 5:2-15(J. Bissoon)). After both plaintiffs were cross examined by this Honorable Court, the Judge further stated that the purpose of the hearing was not "an advocacy situation[,]" but, in addressing Attorney Ward, to "determine what you've done."  (Tr. 14:19-21(J. Bissoon)). However, the Court also mentioned several times that no one was being charged or accused of anything. (Tr. 61:11-14, 67:6-10 (J. Bissoon)). This Honorable Court was referencing the agency that J.P. Ward & Associates exercised in writing 1692e(8) dispute letters on behalf of their clients.

---

[2] Citation to the in-person hearing transcript ("Tr.") refer to the in-person hearing on February 20, 2024, proceedings.

Unbeknownst to J.P. Ward and Associates, this Honorable Court's inquiry involved several other cases, outside of Mr. Sofaly and Mr. Malcome, that the court desired to learn about. (Tr. 44). Including one letter in relation to a Mr. or Mrs. Kantoroski, of particular concern to the court, containing a reference to a "bicycle". Which letter was not drafted or authored in any way by J.P. Ward & Associates.  (Tr. 21, 25, 26, 27, 28, 29).  This Honorable Court did not specifically inquire as to whether that matter was settled with PRA, without any accusations of wrongdoing.   The Court did confirm with Attorney Burnette that Attorney Gordon had previously disclosed in discovery that a similar e(8) dispute letter was drafted on behalf of the consumer, without disclosing the agency prior to the lawsuit.  Attorney Burnette confirmed only in one case that the matters were settled. (Tr. 55).

Attorneys Ward and Gordon attempted to stress in their testimony that they had not invented this practice, but rather, adopted it after Attorney Gordon was successful in representing credit repair organizations that used the practice. There is "lots of evidence of this type of activity –" (Tr. 33:19-20 (Ward)). Attorney Gordon had worked on several cases for a credit repair organization, AIM Financial, LLC. (Tr. 33:10-20 (Ward)). In working with AIM in the past, "[Attorney Gordon] prosecuted those case in court and went through discovery with some of the lawyers there are." (Tr. 34:12-14 (Ward); 27:2-5 (Hollingsworth)). Indeed, Attorney Gordon had litigated a similar cases, including with Counsel for the Defendant in this matter, Attorney Burnette, where he fully disclosed the authorship of a 1692e(8) dispute letter. (Tr. 55:7-12 (Burnette)). In prosecuting these specific types of FDCPA cases, "nobody ever accused Attorney Gordon or AIM or its clients of doing anything wrong whatsoever." (Tr. 34:14-15 (Ward)). In fact, on that occasion, Attorney Burnette settled an AIM Financial LLC case on mutually agreeable terms after an ENE. (Tr. 55:11-12 (Burnette)).

12

Therefore, when J.P. Ward & Associates began implementing these methods, Attorney Ward was confident enough that the practices were proper under Attorney Gordon's management. (Tr. 34:1-20).   Attorney Ward testified, "So Attorney Gordon came to me in fall of 2023 and said we should, you know, adopt some of these practices and bring them in-house because it's repeatable and scalable and it fits nicely into our bouquet of services." (Tr. 35:16-19).   Attorney Ward went on, "And when you consider that he had already successfully done this with a batch of cases for a credit repair organization, I think it sheds light on, you know, my business judgment and my judgment as the principal of the firm." (Tr. 36: 7-11).   Attorney Gordon and Attorney Ward conferred at the outset and were both cognizant that the agency should be established in writing, and orally, to avoid potential challenges with respect to standing. (Tr. 35).   Otherwise, they were not anticipating that they would be questioned regarding ethics or criminal activity by anyone, much less the courts. (Tr. 43-44) (Ward).   Attorneys Ward and Gordon expressed that they felt pride in the service that they were providing within their existing FDCPA practice. (Tr. 48) (Gordon).

Attorney Gordon testified that in addition to the written representation agreements, he obtained agency consulting with the clients, and advising them of the credit dispute process, and the prosecution of an FDCPA 1692e(8) claim in federal court. (Tr. 6: 16-23 (Malcolm); 12:2-5 (Sofaly); 18:12-18 (Salada); 23:7-13 (Hollingsworth); 30:1-6 (Hodil); 35:15-22, 43:11-17 (Ward), 47:21-25, 48, 1 (Gordon)). The clients then executed a representation agreement that granted Attorney Gordon authority to dispute the debts in the manner described therein, specifically sending the handwritten 1692e(8) dispute letter. (See Exhibit 2) The representation agreements establish agency, and the statements of the clients themselves establish in fact that the Law Firm was authorized to draft the letter, sign, and send it. (Tr. 6-14). Furthermore, the Plaintiffs again

ratified their attorney's actions and signed a second representation agreement authorizing the firm to file e(8) claims. (See Exhibit 3)

This Honorable Court inquired into whether it was proper for a law firm to pen a letter styled as if it was written by the consumer's own hand.   This Honorable Court Attorney Ward attempted to inform the Court of the "dearth of caselaw" regarding the use of a handwritten letter, as opposed to a type written letter, to format 1692e(8) dispute letters. (Tr. 37:8-9, 37:20-38:1-4, 17 (Ward)). The handwritten letters were again a practice adopted from AIM Financial, LLC in matters where the parties were never accused of misconduct or ethical violations. (Tr. 30:9-11 (Hodil); 34:14-15 (Ward)). The practice is "[n]ot unique to Attorney Gordon. It is employed by credit repair organizations all the time." (Tr. 42:7-10 (Ward)). The purpose of these letters was to communicate a dispute to the Defendant. (Tr. 22:12-18 (Hollingsworth); 51:25-52:1-2). The clients gave their express authority to draft the handwritten letters. (Tr. 6-14 (Sofaly)(Malcolm)) Further, Attorney Ward explained that "to say that a handwritten letter is illegal, I don't know any court, law that would ever prohibit your right to freedom of expression in that way." (Tr. 37:3-6 (Ward)).  Which was the same sentiment expressed by Attorney Gordon in his letter to the Court. Attorney Ward's "ham sandwich" proposition holds relevance in the Court's examination of whether a handwritten letter is permissible, compared to various other forms of acceptable communication, including written, electronic, physical, oral, non-verbal, direct, or indirect means (Tr. 38). Attorney Ward asserted that all these forms are acceptable under e(8) as clarified by the Seventh Circuit in *Evans* and *Terejo*. (Tr. 38).

This Honorable Court probed further: "So you sent a letter representing that it came from someone it did not come from; correct?" (Tr. 41:24-25 (J. Bissoon). Attorney Ward responded "I absolutely disagree with that. Principles of agency... if he has agency to write and do exactly what

he did, then he is the consumer, and I have case law under the FDCPA that talks about that." (Tr. 42:1-5 (Ward)).  Under the principles of agency, if a client authorizes attorney to "'sign my name,' that is their signature. It's genuine. (Tr. 43:12-13 (Ward)). This Honorable Court took notice of the dispute letters, inquiring several times "the purpose of them being handwritten…" (Tr. 30:7-8 (J. Bissoon)).

A considerable portion of This Honorable Court's inquiry focused on whether including additional language that does not directly dispute the debt, which this Honorable Court characterized as "fluff", was material to the claims or perhaps violative of the Rules of Professional Conduct.  (Tr. 38:17-20).  The "fluff" can be described as "opinions that are put in here… not material facts designed to alter or mislead." (Tr. 45:16-17).  Candidly, Attorney Ward testified, prior to Attorney Gordon, that he believes that the well-established law supports the proposition that "there is nothing illegal about a consumer expressing an opinion in a dispute letter under e(8)." Attorney Ward acknowledged that the "fluff" could be considered nonsensical by objective standards, and that was part of Attorney Gordon's strategy, and that he approved of it generally. (Tr. 46:1-10).  Attorney Ward explained that it was his belief that "it's not material to any aspect of the civil case liability and defenses that the letters have a goofy tone." (Tr. 40:1-2).  To illustrate this point, Attorney Ward posed a hypothetical:

> You could send a dispute letter written on a ham sandwich with mustard, give it to Keith McGurgan, and if he knows or should know that that's a legitimate dispute, they have to update it. Look at the standard in *[Evans]*.

(Tr. 38. 9:13).

Similarly, as the architect of the letters, Attorney Gordon testified that the handwritten nature of the letters, containing opinions that might be shared by the least sophisticated or indigent consumers, is part of his strategy to trigger duties under e(8) and obtain the best results the law

15

permits for the clients. Attorney Ward and Attorney Gordon are of the belief that the law surrounding e(8) does not focus on the method of dispute, but solely whether a debt collector knows or should know that the debt is disputed.

On a related point, this Honorable Court inquired into whether the purpose of the superfluous language was to anticipate a lack of due diligence that may result in an e(8) violation in favor of the firm and the consumers. Indeed, it was. Attorney Ward attempted to articulate that in the contexts of FDCPA claims, and specifically e(8) claims, no court has found that 'unclean hands' operates as a defense. See *Francisco*, infra. To the contrary, as in *Evans* and *Terejo*, the courts have found that there is no issue with the fact that a consumer or consumer attorney hoped that the creditor would violate e(8) when they sent the letter. This is consistent with the legislative intent of the FDCPA, as a remedial statute designed to be self-enforced by consumers acting as private attorneys general. (Tr. 37-38).

The Court's inquiry also focused on whether two consumers can, without violating any laws, authorize a single agent to draft an identical e(8) dispute letter. The clients were aware and gave their approval of the inclusion of "superfluous language" prior to J.P. Ward & Associates sending the 1692e(8) dispute letters. (Tr. 40:23-41:6 (Ward); 47:20-48:1 (Gordon)). The, "fluff", as the Court termed it, are adopted "generic… goofy opinions, that… an indigent person might say." (Tr. 39:14-15 (Ward)). Both Attorney Ward and Attorney Gordon testified that they perceived no issue with that aspect of the practice. Indeed, in many other contexts, over the years, they have assisted consumers in sharing or adopting opinions, expressed through language, that appears identical, or very similar. Both Attorneys Ward and Gordon were of the opinion that two or more consumers are capable of adopting identical opinions and language: "You know, opinions, like a lot of other things, can be shared." (Tr. 45:12-15). Moreover, the commonality of the letters

16

was not something they intended to obfuscate at any point, and they had the expectation that those facts would be obvious to the debt collectors, and their representatives in the adjudication of these anticipated lawsuits.  (Tr. 35-36, 41, 45, 52).

This Honorable Court impressed upon all present, through cross examination, "I'm not asking about caselaw." (Tr. 38:17 (J. Bissoon)).  Attorney Ward affirmed this Honorable Court's suspicion that he did have "some desire to put something on in a primitive way" in reference to his case in chief on behalf of all those present and Mirandized.  Although, Attorney Ward did express that he felt that his substantive and procedural due process rights may be at risk at several points during the proceedings. (Tr. 15, 47, 61).   Attorney Ward, on behalf of all those Mirandized, expressed that he felt that he could not be well understood due to the "adversarial" and "surprising" nature of the hearing.  (Tr. 56).   This Honorable Court allowed a briefing schedule within four days. (Tr. 60).  Attorney Ward asked for additional time, because he could not procure a transcript and present expert testimony or written opinion within four days. (Tr. 61).   In response, the Court assured Attorney Ward that he had every opportunity to present his case at that very moment. While at the same time, informing Attorney Ward that this Honorable Court and "the Board of Judges as a Whole, will be exploring whether or not any ethical transgressions have occurred here." This Honorable Court then, *sua sponte*, called forth an ethics attorney, Ryan James, Esq., which J.P. Ward & Associates retained to advise and observe the proceedings from the gallery.  (Tr. 62). J.P. Ward & Associates had no intention of calling forth Attorney James to testify at that juncture, but rather, at a later date when the transcript of the hearing could have been digested.

Attorney Ryan James, called to the bench and sworn, felt compelled to adopt an "advocacy" posture in the moment in defense of J.P. Ward & Associates, and that he was now "potentially disqualified" from serving as an ethics expert. (Tr. 64).   Attorney James was primarily

concerned with protecting the procedural and substantive due process rights of all those Mirandized. (Tr. 65-66).     Attorney James explained, "one of the looming questions is what's the potential rule of professional conduct that's at issue… That was up in the air." (Tr. 63:12-14 (James)). Attorney James pointed out that "the Court's setting a briefing schedule within four days from now makes it difficult to give the Court a substantive opinion that can touch upon things." (Tr. 64:12-14 (James)). Even the end of the hearing, Attorney Ward was "flying in the dark, so to speak[,]" (Tr. 65:19-20 (James)), and should be made aware "of what rules of professional conduct are we dealing with? What's the Court's particular concern? Is it a matter of frivolity? Is it a matter of fraud? Is it a matter of deceit? Is it a matter of agency? Competency? A whole host of things." (Tr. 65:14-18 (James). Thereafter, Attorney James suggested that it "would be prudent to protect his substantive and procedural due process interests." (Tr. 65:24-66:1 (James)). Judge Bissoon conceded to Attorney James requests and for the first time advised the parties that the 'fact-finding' in-person hearing was regarding violations of the Model Rules of Professional Conduct "Rule 1.2D… Rule 3.1… Rule 3.3…Rule 3.4B… [and] Rule 8.3." (Tr. 67:11-68:15 (J. Bissoon)).

Attorney James has filed an ethics opinion contemporaneously with the instant Brief.

**IV.      STANDARD OF REVIEW**

The standard of review is unclear, given that this Honorable Court has assured all those present: "Well, again, you do not stand accused of any ethical violations. There is a process by which those things happen, and those are the situations where you may defend against any such charges." See also, *Ethics Opinion* of Attorney Ryan James filed in this matter.   Indeed, Portfolio Recovery Associates, LLC is not taking any advocacy position, and has no motions pending before the court, and has not suggested any wrongdoing on behalf of J.P. Ward & Associates.  However, this Honorable Court has issued a "stay" on the proceedings.  Therefore, it could be accurate to state that it is an 'abuse of discretion standard' regarding this Honorable Court's inherent authority to exercise calendar control.

**V.**    <u>**QUESTIONS PRESENTED**</u>

**A.** Whether in enacting the FDCPA, Congress intended for consumer attorneys to engage in practice of drafting and sending 1692e(8) letters on behalf of their clients in the manner executed by J.P. Ward & Associates?

***Suggested Answer: Yes***

**B.** Whether J.P. Ward & Associates had the proper agency and express authorization of their clients to draft and send the 1692e(8) dispute letters in a handwritten format?

***Suggested Answer: Yes.***

**C.** Whether the content of the 1692e(8) dispute letters was sufficient to place a strict liability duty on the Defendant to report the disputed nature of the debts the Credit Reporting Agencies?

***Suggested Answer: Yes.***

**D.** Whether case law supports a finding that the attorneys' actions were ethical non-sanctionable behavior?

***Suggested Answer: Yes***

**E.** Whether the attorneys violated the Model Rules of Professional Conduct?

***Suggested Answer: No***

## VI.   **ARGUMENT**

### A.   **The remedial purpose of the FDCPA and Understanding Section e(8) Violations.**

The FDCPA is a remedial statute, *Conboy v. United States Small Bus. Admin.*, 992 F.3d 153, 160 (3d Cir. 2021). The Third Circuit has reasoned that "Congress observed that '[e]xisting laws and procedures' enacted to remedy the injuries occasioned by abusive debt collectors 'are inadequate to protect consumers.'" *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citing 15 U.S.C. § 1692(b)). Therefore, courts are to construe its language broadly, so as to effect its purpose. See *Stroh v. Director, OWCP*, 810 F.2d 61, 63 (3d Cir.1987).

Congress intended to incentivize law firms like J.P. Ward & Associates to strategy and assist consumers in enforcing the FDCPA, to further societal good.  For ten years, one area of law that the firm has focused on is FDCPA.  The firm's efforts have certainly served in some way to stop abusive debt collection practices.  Congress created a mechanism to encourage FDCPA actions in furtherance of the public interest.  The FDCPA contains a statutory "fee-shifting" provision whereby a prevailing plaintiff can win attorney's fees and costs paid by the defendant. 15 USC ss 1692k.   Congress intended for the FDCPA to be self-enforcing. *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004).; see also *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) (The FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as **private attorneys general**")(emphasis added).   This sentiment permeates the text of the statue, and all of the case law that has developed since its passage in March of 1978.

To those members of the public that may peruse these proceedings, many of whom are likely to be unfamiliar with the FDCPA, it may seem strange that a lawyer would endeavor to create a lawsuit to benefit the firm and a consumer.  But in the context of the industry and economy

surrounding the FDCPA, it is common, and is not strictly limited to lawyers.

The relevant portions of Section e(8) under the FDCPA states that:

> [a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e(8)

In *Brady v. Credit Recovery Co.*, the First Circuit held that Section e(8) of the FDCPA requires a debt collector, when communicating with a Credit Reporting Agency, to disclose that a given debt is disputed. *Brady v. Credit Recovery Co.*, 160 F.3d 64 (1st Cir. 1998). In carrying out Congress' intent that the FDCPA should be considered broadly, the Court held "§ 1692e(8) merely requires a debt collector who knows or should know that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history." (emphasis added) *Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998).

The Ninth Circuit held that "The [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Est. of Torsiello ex rel. Torsiello v. McGovern Legal Servs., LLC*, No. CIV. 14-3814, 2014 WL 4758024, at *5 (D.N.J. Sept. 24, 2014) *(citing Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 777 (9th Cir.2002)); *see also Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998) ("[T]he plaintiff who admittedly owes a legitimate debt has standing to sue if the [FDCPA] is violated by an unprincipled debt collector."); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992) ("The Act makes debt collectors liable for various abusive, deceptive, and unfair debt collection practices regardless

of          whether          the          debt          is          valid.").

Failing to report these consumer disputes creates an injury-in-fact. Numerous Courts have ruled that a consumer suffers "a real risk of financial harm caused by an inaccurate credit rating." *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017); *see also Evans v. Portfolio Recovery Assocs., LLC,* 889 F.3d 337, 345 (7th Cir. 2018) *(*reasoning "An inaccurate credit report produces a variety of negative effects."*).*

In 2010, President Obama created the Consumer Financial Protection Bureau.[3] The creation of the CFPB was "a single point of accountability to assure that markets for consumer financial products work for American consumers and for responsible providers of those products."[4] The Defendant in this case is not unfamiliar with the CFPB. In 2015 and again in 2023, the CFPB entered consent orders against Portfolio Recovery Associates, LLC.  (2:23-cv-110 CFPB v. PRA) (See Exhibit 5) The 2023 consent order, specifically referenced the Defendants inadequate procedures regarding consumer disputes:

> PRA failed on numerous occasions to timely respond or reasonably investigate when consumers disputed debts. For a period, PRA's operations for processing and recording Direct Disputes were insufficient, ***resulting in thousands of disputes being ignored for months***. On at least tens of thousands of additional occasions, PRA did not timely investigate and resolve Direct Disputes or timely notify consumers when it would not investigate because it believed the disputes were frivolous. And on numerous occasions, PRA conducted inadequate investigations of fraud and identity theft disputes. Consumers who were unable to correct errors on their reports may have paid more for credit or been denied credit, employment or housing.

*CFPB v. Portfolio Recovery Assocs., LLC*, No. 2:23-cv-110 (E.D. Va. Apr. 13, 2023), ECF No. 10. (emphasis added)

---

[3] *Building the CFPB*, Consumer Financial Protection Bureau, July 18, 2011 (https://files.consumerfinance.gov/f/2011/07/Report_BuildingTheCfpb1.pdf) (Last Visited February 26, 2024)
[4] *Id.*

PRA signed a second consent order with the CFPB in April of 2023. Paragraph 15, specifically discusses PRA's duties under e(8) whenever the know or should know that a consumer disputes a debt?

> Subparagraph j defines a "covered dispute" as: (a) any written or oral dispute concerning the accuracy or validity of a Debt submitted directly to Defendant or a Law Firm that includes sufficient information to identify the account or other relationship that is in dispute (including but not limited to any Direct Dispute); and (b) any Indirect Dispute.

*CFPB v. Portfolio Recovery Assocs., LLC*, No. 2:23-cv-110 (E.D. Va. Apr. 13, 2023), ECF No. 10. A handwritten dispute letter, even if it contains "fluff" or are "identical" to other consumer's letters, are certainly "covered disputes."

It has been suggested that Attorney Gordon and Attorney Ward had a "scheme" to do something fraudulent. (Tr. 33:2, 54: 4).  Rather, they were incentivized and encouraged by an act of congress, the case law, and the CFPB, to enforce the FDCPA for public good, in exactly the way they did. *See Tejero v. Portfolio Recovery Assocs., LLC,* 955 F.3d 453, 461 (5th Cir. 2020). ("[M]isapplication of Rule 11 can chill counsel's enthusiasm and stifle the creativity of litigants in purs[u]ing novel factual or legal theories, contrary to the intent of its framers" (quotation omitted)). The simple truth here, is that PRA is a repeat offender of the FDCPA and has continuously shown that their consumer dispute review process falls woefully short of their obligations under Federal Law.[5] (See Exhibit 5).

---

[5] J.P. Wad & Associates sent identical dispute letters for Mr. Sofaly to three creditors, including PRA. PRA was, seemingly, the only creditor that did not correctly identify the consumer dispute and report the dispute to the CRAs.

**B.** **The Attorneys had proper agency and express authorization from the clients to send the dispute letters.**

PRA had a duty to honor the dispute letter regardless of who authored it, so long as this was a proper exercise of express agency. *Walton v. Johnson*, 2013 Pa. Super. 108, 66 A.3d 782, 786 (2013) ("An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel"). There is conclusive and overwhelming evidence to support that this act was authorized and therefore valid.

First, Attorney Travis Gordon consulted with the clients, and advised them of the credit dispute process. (Tr. 6: 16-23 (Malcolm); 12:2-5 (Sofaly); 18:12-18 (Salada); 23:7-13 (Hollingsworth); 30:1-6 (Hodil); 35:15-22, 43:11-17 (Ward), 47:21-25, 48, 1 (Gordon)). The clients then executed a representation agreement that gave J.P. Ward and associates explicit authority to dispute the debts in the manner described therein, specifically sending the handwritten 1692e(8) dispute letter. (See Exhibit 2). The representation agreements establish agency, and the statements of the clients themselves establish in fact that the Law Firm was authorized to draft the letter, sign, and send it. (Tr. 6-14).

Furthermore, the Plaintiff's again ratified their attorney's actions and signed a second representation agreement to file e(8) claims. (See Exhibit 3). Even assuming *arguendo* that the clients did not give J.P. Ward & Associates the agency to draft and send the dispute letter, by executing the representation agreement to bring the claims, the clients adopted and ratified the dispute process and dispute letters.

Therefore, PRA had a duty to honor the dispute letter regardless of who authored it, so long as this was a proper exercise of agency and express authorization. Attorney Gordon and Attorney exercised this agency in an appropriate manner on behalf of their clients.

**C. <u>The contents of the dispute letter constituted a valid dispute under 1692e(8).</u>**

There is not one case in the progeny of section 1692e(8) that this Court or Defendants can cite to that would indicate that the dispute letters in these instant cases were invalid or for the purpose to perpetuate some fraud based on the language contained therein.  That would require this Honorable Court to rule *sua sponte* to create precedent on a substantive issue of first impression.  We think, candidly, that the established case law militates very strongly in favor of Plaintiffs here.  Which may inform why PRA has not filed any dispositive motions and simply answered the complaints.   The purpose of the dispute letter was to covey a dispute to PRA regarding the clients' alleged debts, and the dispute letters sufficiently did just that. (Tr. 22:12-18 (Hollingsworth); 51:25-52:1-2 (Gordon)).

The Seventh Circuit consolidated and examined four separate cases where the Plaintiff's attorneys sent dispute letters on behalf of their clients. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018). There, PRA argued "it committed no violation because *the Letters 'do not qualify as raising any type of true dispute, but are a sham, designed to create liability where no harm to a consumer is threatened[,]'*" and "that § 1692e(8) 'should be given a reasonable interpretation as only applying to true disputes that can be understood as such and meaningfully investigated and addressed.'" (emphasis added) *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346 (7th Cir. 2018). The Seventh Circuit correctly held that "PRA's argument is contrary to the language of § 1692e(8)." *Id.*

The *Evans* Court, in analyzing the language of the dispute letters relied on *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998). That Court held "§ 1692e(8) merely requires a debt collector who knows *or should know* that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history." (emphasis added) *Brady v.*

*Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998). Therefore, the Seventh Circuit concluded that: "When plaintiffs said 'the amount reported is not accurate,' they 'call[ed] into question' the amount PRA claimed they owed—in other words, they *disputed* the debt. There is simply no other way to interpret this language. Each of the district courts below arrived at the same conclusion." *Id.* (citing *Paz v. Portfolio Recovery Assocs., LLC*, No. 15-cv-5073, 2016 WL 6833932, at *4 (N.D. Ill. Nov. 21, 2016); *Evans v. Portfolio Recovery Assocs., LLC*, No. 15-cv-4498, 2016 WL 6833930, at *2 (N.D. Ill. Nov. 20, 2016); *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F.Supp.3d 745, 751 (N.D. Ill. 2016); *Gomez v. Portfolio Recovery Assocs., LLC*, No. 15-cv-4499, 2016 WL 3387158, at *3 (N.D. Ill. June 20, 2016); *Baranowski v. Portfolio Recovery Assocs., LLC*, No. 15-cv-2939, 2018 WL 1534967, at *3 (N.D. Ill. Mar. 29, 2018); *Flores v. Portfolio Recovery Assocs., LLC*, No. 15-cv-2443, 2017 WL 5891032, at *3 (N.D. Ill. Nov. 29, 2017)).

Indeed, District Courts have roundly rejected the "unclean hands" defense. *Francisco v. Midland Funding, LLC*, Case No. 17 C 6872, 7 (N.D. Ill. Feb. 8, 2019). (holding that that even if the consumer and his or her attorney knowingly contrived a Fair Debt Collection Practices Act (FDCPA) violation, the debt collector is not entitled to a defense under the "unclean hands" doctrine). The "unclean hands" defense has been so roundly rejected because consumers are not required to use specific language like "dispute" or "verify" to dispute a debt. See *Dixon v. RJM Acquisitions, LLC*, 640 F. App'x 793 (10th Cir. 2016) (holding consumer created genuine fact issue given that she said during a phone conversation: "I don't agree that I owe that much, that's too much," "I don't owe that much," and "I feel all I owe is $20"). Furthermore, "Section 1692e(8) does not require an individual's dispute **be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt**." *Evans* at 346 (citing *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010) ("**[A] consumer can dispute a debt for 'no reason at**

**all ….**'"")).

On the question regarding whether "fluff" is illegal, once again, Attorney Ward's "ham sandwich" proposition cuts the mustard. (Tr. 38).

**D.** __The Attorneys brought the lawsuits in good faith and not in a scheme to abuse the__
__FDCPA or the Defendant.__

The two lawsuits filed by J.P. Ward & Associates against the Defendant were meritorious, based on factual evidence, and not filed in bad faith. In fact, J.P. Ward & Associates has obtained favorable settlements for clients in recent cases with the Defendant under the exact same set of facts and similar dispute letters. In the context of an FDCPA claim, the United States Supreme Court has ruled that "If the plaintiff obtains a favorable judgment *or a settlement*, then by definition the suit will not have been brought in bad faith." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 618 (2010) (emphasis added) (citing *Emanuel v. American Credit Exch.,* 870 F.2d 805, 809 (C.A.2 1989) (FDCPA defendant's "claim for malicious prosecution cannot succeed unless the action subject of the claim is unsuccessful")).

At the in-person hearing, Judge Bissoon focused on the language of the dispute letter in question to indicate some nefarious intent on behalf of J.P. Ward & Associates. However, numerous courts have held that is an improper application of the FDCPA in regards to Section 1692e(8). Further, at least one Circuit Court held that such a finding is an abuse of a district court's discretion. See *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453 (5th Cir. 2020). Therefore, issuing sanctions for Attorney Gordon's and Attorney Ward's conduct would be improper and an abuse of this Court's discretion.

In *Jones v. Portfolio Recovery Assocs., LLC*, No. 1:16-CV-572-RP, 2017 WL 7052288

(W.D. Tex. Aug. 16, 2017), the Defendant argued that the dispute letter was a boilerplate letter drafted and used by the Plaintiff's law firm in several other cases. *Id.* at *4. PRA further argued that "such a letter 'raises doubts as to whether Plaintiff actually considered the amount of the debt, recognized that there was a disparity in amount, and made a challenge.'" *Id*. The district court in *Jones* gave a well-reasoned rejection of PRA's arguments and granted Plaintiffs Motion for Summary Judgment, stating:

> While the FDCPA does not define "dispute," neither the statute nor applicable case law suggest that a plaintiff must demonstrate that she "actually considered the amount of the debt, recognized that there was a disparity in amount, and made a challenge." . . . . Moreover, Defendants' emphasis on the other language in Plaintiff's letter suggests they would consider her attempt to dispute the debt valid if she had only written: "I refuse to pay this debt. The amount you are reporting is inaccurate." **It cannot be the case that merely including additional language renders a dispute invalid, and Defendants offer no case law suggesting that it is.**

*Jones v. Portfolio Recovery Assocs., LLC*, No. 1:16-CV-572-RP, 2017 WL 7052288, at *4 (W.D. Tex. Aug. 16, 2017) (emphasis added).

Indeed, the district court in *Jones* pointed out that any other reading of Section 1692e(8) would defeat Congress' purpose in enacting the FDCPA. Instead, a contrary ruling would leave it to the same abusive debt collectors that the FDCPA was intended to police to determine the maximum number of words that a consumer dispute can contain before the debt collector can disregard its contents entirely.

A dispute letter can be as short, or as long, as a consumer pleases.

### E. Appellate Caselaw suggests that the conduct of the Attorneys was proper and ethical.

Finally, in nearly identical factual circumstances and allegations as the cases at issue, the Fifth Circuit ruled in favor of the Plaintiff's attorneys. See *Tejero v. Portfolio Recovery Assocs.,*

*L.L.C.*, 955 F.3d 453, 461 (5th Cir. 2020). The Attorneys for the Plaintiff in *Terejo* drafted and faxed a dispute letter to PRA on behalf of their client.[6] In *Terejo*, the District Court imposed sanctions on the Plaintiff's attorneys as well as referred them to the disciplinary committee for the Western District of Texas. The basis for the District Court's actions was, among other things[7], because "Terejeo's attorneys acted in bad faith when they… *drafted the January 2016 debt letter in a manner that would cause the debt collector not to realize that the debt was disputed*, so that counsel could engage in a "*scheme*" to "force settlements from debt collectors by abusing the FDCPA." (*emphasis added*) *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 457 (5th Cir. 2020).

In relying on much of the same case law and reasoning described *Supra*, the Fifth Circuit reversed the District Court's ruling, in relevant part, stating:

> **The district court simply had no basis to ignore the language of the letter and instead infer subjective bad faith based on its view of the attorneys' "inten[t]."** Even with the high degree of deference afforded a district court's factual findings, that's reversible error. (citations omitted) **(emphasis added)**

*Tejero v. Portfolio Recovery Assocs., LLC*, 955 F.3d 453, 461 (5th Cir. 2020). Furthermore, the disciplinary committee for the Western District of Texas exonerated the Plaintiff's attorneys in

---

[6] Dear Sir or Madam:
I am writing to you regarding the account referenced above. I refuse to pay this debt.
My monthly expenses exceed my monthly income; as such there is no reason for you to continue contacting me, and the amount you are reporting is not accurate either. If my circumstances should change I will be in touch.
Sincerely,
Luis Tejero
*Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 456 (5th Cir. 2020)

[7] The attorneys in *Terejo* arguably committed worse conduct than the alleged misconduct Attorney Gordon and Attorney Ward stand accused: "The court reasoned that Tejero's attorneys acted in bad faith when they: (1) failed to comply with the September 2016 settlement-offer order; (2) continued to litigate the case even after receiving an offer that would make Tejero whole; and (3) drafted the January 2016 debt letter in a manner that would cause the debt collector not to realize that the debt was disputed, so that counsel could engage in a 'scheme' to 'force settlements from debt collectors by abusing the FDCPA.'"
*Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 457 (5th Cir. 2020)

*Terejo* of any wrongdoing.[8]

Indeed, the 1692e(8) dispute letters drafted by J.P. Ward & Associates stated "I saw that your company is reporting that I owe you a sum of money, but I just don't think that is correct. I am very sure that I have never been a customer or client of yours and so I don't think this is right." (See Exhibit 1)  There is not a jurisdiction in the United States that would interpret that statement in any other way, other than to dispute the debts in question. In referencing the dispute letter that was drafted by the Plaintiff's attorneys in *Terejo*, the Fifth Circuit stated: "…other readers, like debt collectors—understand the letter to dispute a debt. And, if anything, the fact no court had found the letter insufficient to dispute a debt *should have made the district court here especially reluctant to condemn it*." (emphasis added) *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 461 (5th Cir. 2020).

**F.   The Attorneys did not violate the Model Rules of Professional conduct**

The brief simultaneously filed by Attorney Ryan James is incorporated by reference herein as if set forth fully at length.

---

[8] None of the Plaintiff's attorneys in *Terejo* have any disciplinary record based upon a Texas Bar Attorney Search. See Also Case: 18-50661 W.D. Tex.  Document: 00514831042 Page: 21 Date Filed: 02/11/2019.

VII.    **<u>CONCLUSION</u>**

In conclusion, upon consideration of the record and the ethics brief filed by Attorney Ryan James, the Plaintiff respectfully requests that the stay be lifted in accordance with the well-established precedent.

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: March 1, 2024                    By: <u>/s/ Travis Gordon</u>
                                           Travis A. Gordon (Pa. I.D. No. 328314)
                                           Joshua P. Ward (Pa. I.D. No. 320347)

                                           J.P. Ward & Associates, LLC
                                           The Rubicon Building
                                           201 South Highland Avenue
                                           Suite 201
                                           Pittsburgh, PA 15206

                                           *Counsel for Plaintiff*