## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT SOFALY,** | *Electronically filed* |
| *Plaintiff,* | **Case No.: 2:23-cv-02018-CB** |
| **v.** | |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC,** | **PLAINTIFF'S BRIEF IN RESPONSE TO RULE TO SHOW CAUSE** |
| *Defendant.* | |
| **DAMIEN MALCOLM,** | *Electronically filed* |
| *Plaintiff,* | **Case No.: 2:24-cv-00053-CB** |
| **v.** | |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC,** | **PLAINTIFF'S BRIEF IN RESPONSE TO RULE TO SHOW CAUSE** |
| *Defendant.* | |

**J.P. WARD & ASSOCIATES, LLC**
Joshua P. Ward
Pa. I.D. No. 320347
Travis Gordon
Pa. I.D. No.
J.P. Ward and Associates, LLC
201 South Highland Ave. Suite 201
Pittsburgh, PA 15206

Telephone:      (412) 545-3015
Fax No.:        (412) 540-3399
E-mail:jward@jpward.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT SOFALY,** | *Electronically filed* |
| *Plaintiff,* | **Case No.: 2:23-cv-02018-CB** |
| **v.** | |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC,** | |
| *Defendant.* | |
| **DAMIEN MALCOLM,** | *Electronically filed* |
| *Plaintiff,* | **Case No.: 2:24-cv-00053-CB** |
| **v.** | |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC,** | |
| *Defendant.* | |

**<u>PLAINTIFFS' BRIEF IN RESPONSE TO RULE TO SHOW CAUSE</u>**

AND NOW, comes Plaintiffs, Robert Sofaly and Damien Malcolm, by and through the undersigned attorneys, and submit the within Plaintiff's Brief in Response to Rule to Show Cause, of which the following is a statement:

**I.      INTRODUCTION**

In hindsight, we acknowledge that was foreseeable that this Honorable Court might question the FDCPA and credit repair practices at issue.  However, we respectfully disagree with any effort to sanction the conduct at issue.  We believe that the record established that the principles of agency, caselaw, and ethical rules, fairly permit such practices under the FDCPA.

It is unusual that a court should, *sua sponte*, pursue sanctions or Rule 11 remedies.   The facts here bear a striking similarity to the *Terejo* matter.  We submit that the precedent established there strongly militates in our favor.  Nonetheless, we must respect that there are widely differing perspectives and sentiments about FDCPA practice at large.    Further, we acknowledge that the tactics employed by the firm and its clients are not commonplace in all jurisdictions.

Here, we presented Complaints premised on hand-written dispute letters drafted by the law firm on behalf of consumers, containing additional superfluous language, and audited credit reports to determine whether Portfolio complied with its duties under FDCPA e(8) to update the accounts as "disputed."  To us, this consumer service did not seem unusual.  Rather, it seemed savvy and within the limits of the law.  Today, we acknowledge that our practices were likely to invite some level of inquiry. We cannot criticize this Honorable Court for inquiring into the propriety of this practice.  Rather, we hope to respectfully respond, and resolve the matter.

At prior stages, this Honorable Court's inquiry was driven by suspicions that the firm had violated a number of the Pennsylvania Rules of Professional Conduct.   As the record shows, the firm believed that it was engaging in creative representation of consumers within the confines of the law and the Rules of Professional conduct.   Indeed, the lawyers at J.P. Ward & Associates, (previously The Law Firm of Fenters Ward), were consumer debt defense attorneys before anything else.   Today, the firm is fortunate enough to practice in debt defense, consumer protection, class actions, employment law, and personal injury.  Certainly, no lawyer within our firm has early aspirations of becoming a debt defense attorney or prosecutor of FDCPA claims. Rather, consumer finance was the opportunity that fate, and circumstance presented. As entrepreneurs, we answered that call as best as we could, always hoping to advance into more sophisticated areas of practice.

Over the years, we sought to assume this first station with dignity, zeal, and industriousness.  Now, we have come under scrutiny in this long-standing endeavor.  It is true, we do possess some modicum of pride in our success in this niche area.  We excelled in supporting consumers and the laws that protect them.  Through the years, we held to the notion that were following the manifest will of Congress, state legislatures, courts, and administrative agencies at all stages in our pursuit of this practice.  Indeed, our small success is attributable to our ability to take advantage of procedural and substantive rights that provide a fleeting and thin advantage at certain stages of the debt collection process.  It is highly dependent upon hypothesis, volume, data retention, and analysis.  Which is what we are doing here.

 We (Attorneys Ward and Gordon) successfully practiced civil debt defense, and consumer law, with relative ease for several years. We scaled the practice and refined our practices without any insurmountable or scandalizing challenge from litigants, counsel, or the bench.  When mentioned to any degree, we were lauded for our achievements—until this matter arose. It was that sense of confidence, modest achievement, industriousness, and ingenuity that allowed us to scale and expand our law firm into the more traditional areas of law which we practice today.  We are grateful for the debt defense and consumer protection practice. It is both a present mainstay and part of our history as entrepreneurs and lawyers.

In recent years, Attorney Gordon has assumed a managerial role within the debt defense and consumer protection practice.  Attorney Ward continues to play a vital role in consulting, overseeing, and benefiting from that paradigm as we grow.    Within that context, with approximately a decade of experience, we did indeed develop this "scheme" or design to send handwritten letters on behalf of their clients to dispute debts in a fashion that they believed may be most beneficial to consumers.  At no time did we believe this to be illegal or risky.   As the

record reflects, this practice is not original to our firm (although admittedly not prevalent in every jurisdiction).

To be clear, we do not take offense to any fair inquiry into the propriety of our practices, which are not original to our firm. However, we believe that an inquiry of that sort should be measured, fair, and conducted with appropriate respect for the rights of consumers and consumers and lawyers alike, to pursue the rights that the FDCPA and the developing case law has established. It is our hope that we might continue to practice in the Western District, and before this Honorable Court, in a way that is unmarred by the proceedings that took place in this matter.

Certainly, it was not our ambition to make a spectacle, provoke the Court, nor test ethical boundaries. As a firm, we always hoped to be viewed as competent, budding lawyers, committed to developing the areas of practice available to us. We strive to be regarded as formidable trial attorneys. There can be no doubt this inquiry is a stain on our reputation, regardless of the outcome. Within the context of this inquiry, we do not claim that we hold a moral high ground, but we do strongly desire to resolve this matter. Regardless of what may follow, we must submit to the discretion of this Court. We acknowledge that our FDCPA practice, in retrospect, could foreseeably come under scrutiny. We remain cognizant of the fact that we have flourished though federal practice, and necessarily, at the expense of the resources of the Western District. We held to the belief that our enforcement of the statutory laws was an appropriate balance and worthy use of these resources. If we have failed in that regard, we will do everything in our power to rectify that mistake. Today, we simply wish to reconcile with the Court, and practice in a way that is harmonious with the bench.

At this stage, this Honorable Court has narrowed its inquiry to the discretion afforded by FRCP 11. That being the case, we contend that the issue must focus on the propriety of the Civil

4

Complaints and attachments.  More directly, the question is: *whether the complaint and attachment set forth a plausible legal claim, without material falsity?*

As the record shows, Attorney Gordon did not conceal any material fact in any unethical or illicit manner.  Attorney Gordon did not affirmatively plead or disclose his agency, which is permissible.  Of course, Attorney Gordon disclosed that fact at the appropriate stages, and perhaps sooner. He volunteered the information freely at the ICMC.  It was also established that neither this Defendant, nor any other defendant, has ever alleged wrongdoing or sanctionable conduct. Instead, the Defendant has declined to take any advocacy position on the matter, we believe, because *Evans* and *Terejo* are clear on the legal issues, and highly likely to be adopted by the Third Circuit Court of Appeals if called upon.  It is worth noting that the Defenant was invited by this Honorable Court to state a position, and it declined.

Sanctions under Rule 11 are not appropriate.  They are particularly inappropriate to the extent they would be premised upon any conduct that is not central to the filing of the Complaints. We submit that the Complaints were not filed for any improper purpose or in bad faith. Plaintiffs hereby incorporate by reference herein as if set forth fully at length, the briefs filed at 2:23-CV-02018-CB, ECF No. 25-26, and at 2:24-CV-00053-CB, ECF No. 12-13.

## II.    STANDARD OF REVIEW

The standard of review for an issuance of sanctions is the abuse of discretion standard. *See Scott v. Vantage Corp.*, 64 F.4th 462, 471 (3d Cir. 2023); *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 195 (3d Cir. 1988).  "Abuse of discretion occurs when 'the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Equal Emp. Opportunity Comm'n v. City of Long Branch*,

866 F.3d 93, 98 (3d Cir. 2017)(quoting *Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 79 (3d Cir. 2007) (quoting NLRB v. Frazier, 966 F.2d 812, 815 (3d Cir. 1992)).

## III.   ARGUMENT

### A.  Rule 11 applies to the filing of documents, not pre-complaint conduct.

This Honorable Court, considering Rule 11, stated that the "[Attorneys'] sanctionable conduct, in the broadest sense, relates to their scheme to 'entrap' or 'induce' Defendant into technical violations of the FDCPA."   We cannot reconcile that sentiment with *Brady*, *Evans,* and *Terejo*[1] and the considerable trial court opinions across the country approving of this business model to assist consumers in disputing debts and audit for e(8) violations.   The Court's apparent focus remains the Attorneys' pre-complaint conduct. Rule 11 analysis must focus on the legitimacy of the Complaint itself, which should not expand to any evaluation of pre-complaint conduct.  If that conduct were to come under scrutiny, Rule 11 is not the appropriate tool to address the matter.

Rule 11 requires "every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name." Fed. R. Civ. P. 11(a). By affixing the attorney's signature "an attorney… certifies that to the best of the person's knowledge, information, and belief" that the filing complies with Rule 11(b).  Fed. R. Civ. P. 11(b).

Thus, "it follows from the text of Rule 11 that it applies *only* where a person files a paper." *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 461 (5th Cir. 2020). Rule 11 only applies to filings as there is "Ample protection from the use of abusive tactics in litigation in respects other than the signing of papers is provided by other rules governing attorney conduct." *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988).

---

[1] *Brady v. Credit Recovery Co., Inc.,* 160 F.3d 64 (1st Cir. 1998); *Evans v. Portfolio Recovery Assocs., LLC,* 889 F.3d 337 (7th Cir. 2018); and *Tejero v. Portfolio Recovery Assocs., LLC,* 955 F.3d 453 (5th Cir. 2020).

While we may disagree about the limits of a Rule 11 analysis, we feel compelled to address this Court's specific 'bullet points' to which we were directed to respond.  This Court ordered Plaintiffs' Attorneys "to show cause why the aforementioned conduct is not sanctionable, specifically as relates to:"

> • Federal Rule of Civil Procedure 11(b), requiring that factual contentions enjoy evidentiary support, satisfy the implied duty of candor with the Court and are not presented for improper purpose, id.; *see also Teamsters Local Union No. 430 v. Cement Express., Inc.*, 841 F.2d 66, 70 (3d Cir. 1988) (Rule 11 is designed to penalize abuse of district court process)

We wish to emphasize that the words "satisfy the implied duty of candor with the Court" do not appear anywhere under Rule 11(b), or Rule 11.[2] The Court seems to impose a layer of ethical analysis that may not exist in this context.  As such, we believe that any broader ethic inquiry or charge, which has not been issued, should not be part of the Rule 11 analysis.   Indeed, the firm's ethics counsel briefed that issue.

This Court cites *Huebner v. Midland Credit Mgmt., Inc.*, 85 F.Supp.3d 672 (E.D.N.Y. 2015) for authority to sanction attorneys in the context of a frivolous FDCPA claim. However, the facts in *Huebner* are easily distinguishable from the circumstances of the instant matters. In *Huebner*, the Plaintiff's attorney called the creditor-defendant and attempted many times to provoke an employee to say *something* that would be considered a violation of the FDCPA.[3] *Id.* at 674. Though lacking any meritorious theory of liability, Plaintiff filed an FDCPA complaint

---

[2] The only time the word "candor" appears in Rule 11 is in the notes, where it references an attorney's duty to withdraw claims or factual assertions when an attorney becomes aware that the same are no longer viable as a matter of law or fact. The Court has not raised conduct which falls under this specific note to Rule 11, nor has the Defendant.

[3] A lower court opinion contains a transcript of the entire conversation, which is considerably longer, about 1525 words, than the letter drafted and mailed to Portfolio recovery Associates in this case, about 222 words, 57 of which directly dispute the alleged debt, or 25.67% of the letter. *See Huebner v. Midland Credit Mgmt., Inc.,* 85 F. Supp. 3d 672, 679 (E.D.N.Y. 2015).

asserting that the creditor defendant made a representation that violated the FDCPA, a factual assertion that was proven false as the defendant produced the recording of the call. *Id.* at 675.

Therefore, since the attorney in *Huenber* knowingly signed and filed a frivolous Complaint based upon false assertions of fact, he could be sanctioned as Rule 11 "*focuses on the act of signing the document* as a certification that the signer believes in the propriety of the submission and that it has not been filed for an improper purpose." (*emphasis added*) *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987).

Here, the Complaints and predicate dispute letters surely give rise to a plausible claim. Agency was not required to be disclosed, thus, the Complaint contained nothing false in a material sense.  Also, the disfavored conduct in these matters (the superfluous or "fluff" language in the letters) was not in any way supportive of a defense.  The Complaints were not frivolous or false in any way.  Here, the parties could have litigated and argued on the merits, and Plaintiffs would have won, by our estimation.   Certainly, that is supported by the record and the history of settlements of like claims, when all the facts were known to various defendants.

Regarding the alleged conduct of Plaintiffs' attorneys, the cited authority by this Court said it best: "Still, a technical violation of the statute is a violation, and although the social utility of this industry may be questioned, *this technical use of the statute for economic gain violates no law or ethical precept.*" (*emphasis added*) *Huebner v. Midland Credit Mgmt., Inc.*, 85 F. Supp. 3d 672, 673 (E.D.N.Y. 2015).[4]

We respectfully submit that Rule 11 sanctions are not appropriate.

---

[4] The *Huebner* Court explained that the Plaintiff's conduct in *Huebner*, discernable from the conduct alleged in this matter, went too far and was sanctionable under Rule 11 as the filed complaint was based on a lie known to the Plaintiff and his attorney. *Huebner v. Midland Credit Mgmt., Inc.*, 85 F. Supp. 3d 672, 673 (E.D.N.Y. 2015).

**B.  The 1692(e)8 dispute letter attached to the Complaints does not violate Rule 11.**

The Court appears to focus on the drafting and mailing of the 1692e(8) dispute letter as sanctionable conduct, *not* the signing and submission of the Complaint itself which Rule 11 regulates. Since the Plaintiffs entered into an agency agreement with their Attorneys, the letters were authentic and genuine, not fraudulent, or false.   Again, this practice was known to various creditors and never challenged, and no precedent directly prohibits the practice.  That is the reason why "Plaintiffs' counsel appear[s] fixated on the proposition that agency principles permitted them to draft and sign letters on their clients' behalf.[5]" *See* ECF 28.  Indeed, in responding to this inquiry, we believed the Court was fixated on the same, perhaps believing that the letters were false or illegitimate because we drafted and signed them as an agent of the consumer.  In the past, as the record indicates, the legitimacy of agency was the focus of the defendants when vetting these lawsuits.  In all instances, our practices have held up to scrutiny.  At all times, we maintain that the letters were genuine and fit for their purpose.  Necessarily then, the e(8) claims were presumed *bona fide* and not vulnerable to any defense.

Principles of agency law should be analyzed in order to distinguish the sanctionable false evidence in *Huebner* and the non-sanctionable genuine evidence in these Complaints.  It is well established that:

> By Definition, an attorney is an agent of a client. *See* 7 C.J.S. Attorney and Client Section 1. In fact the powers of an attorney are broader than that of an agent. *Cidek v. Forbes National Bank,* 48 A.2d 103, 105 (Pa.Super. 1946). There has long been a presumption in Pennsylvania law that acts undertaken by a lawyer for a client are in fact authorized by the client. See, e.g. *Board of Supervisors of Bensaiem Township v. DiEgidio*, 396 A.2d 920, 922 (Pa.Cmwlth. 1979). Though an attorney cannot do an act that is specifically prohibited by the client, attorneys do have the apparent authority to bind clients during management of litigation. *See Cidek, supra* at

---

[5] The principles of agency absolutely allow attorneys to draft and send letters on their clients' behalf. *See Walton v. Johnson*, 2013 Pa. Super. 108, 66 A.3d 782, 786 (2013)

105; *Pennsylvania R. R. Co. v. City of Pittsburgh,* 6 A.2d 907, 912
(Pa.1939).

*Sawyer v. Sawyer,* No. 809 MDA 2016, 2017 WL 3476779, at *13 (Pa. Super. Ct.
Aug. 14, 2017)

Rule 11 only requires that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Whatever misgivings this Honorable Court may have initially suspected, the dispute letter is the real, tangible, genuine evidence that forms the basis of this lawsuit, and Plaintiffs relied on the letter in forming the claims in good faith.   As set forth in the prior briefing, the standard is broad, and the creditor need only know, or should know, that the debt is disputed.  The focus is not on the mechanism of dispute.  FDCPA e(8) is a remedial statute, and places a high burden on the debt collector, and is designed to protect the least sophisticated consumers and their conduct.

In the application of Rule 11, the Court must look to the Complaint and whether the attorneys at the time of signing had any purpose other than to prosecute a completed 1692e(8) violation in good faith, not the litigation strategy in drafting the dispute letter. *See e.g. Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866 (5th Cir. 1988); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479 (3d Cir. 1987). The Third Circuit has informed courts that "the standard for testing conduct under amended Rule 11 is *reasonableness under the circumstances*." *(emphasis added) Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir. 1985) (*citing Westmoreland v. CBS, Inc.,* 770 F.2d 1168 (D.C.Cir.1985); *In re TCI Limited,* 769 F.2d 441 (7th Cir.1985); *Davis v. McGraw-Edison Company,* 765 F.2d 494 (5 Cir.1985); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2 Cir.1985); *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985). *See*

10

*also* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181 (1985)).

In applying this standard, the Third Circuit cautioned that a district court "is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring *what was reasonable to believe at the time the pleading, motion, or other paper was submitted.*" *(emphasis added) Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir. 1985) (citing Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R.Civ.P. 11). Here, the record is clear and was addressed at length in Plaintiffs brief. Plaintiffs, by and through their Attorneys, sent a dispute letter to the Defendant. This letter, pursuant to all available case law on the subject, communicated a valid dispute to the Defendant. *See Tejero v. Portfolio Recovery Assocs., LLC*, 955 F.3d 453 (5th Cir. 2020); *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018); *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998). Thereafter, the Defendant failed to report the dispute when communicating with Credit Reporting Agencies. The fact that consumer and attorney may have anticipated this failure is immaterial to Rule 11, or frankly, any other inquiry.  The relationship between creditor (debt buyer) and consumer is adversarial in all aspects.  Similarly, the consumer is wary and distrusting of the debt collector.  It should be expected that consumers will avail themselves to whatever protections the law affords. That includes the anticipated lack of due diligence or care of creditors when honoring consumer disputes as per FDCPA e(8)  Evidentiary support for these factual assertions were well supplied in the form of the dispute letter and the Plaintiffs' credit reports – no evidence was falsified or based on any lie.  These facts are entirely distinguishable from *Huebner*.

When Plaintiffs' attorneys affixed their signatures to the Complaints, there was no alternative or illegitimate purpose in pursuing the 1698e(8)), which Defendant indeed violated.

11

Therefore, Plaintiffs' Attorneys did not violate Rule 11 when the Complaint was signed and filed with the dispute letters attached as it was reasonable under the circumstances that the filings complied with Rule 11.

**C.  The dispute letters cannot genuinely 'entrap' or 'induce' a creditor to violate the FDCPA as a matter of law.**

This Court questions whether the practice of drafting 1692e(8) dispute letters drafted by Plaintiffs' Counsel "entrap[s]" or "induce[s]" creditors into violating the FDCPA. *See* ECF no 28. This conclusion runs contrary to the public policy and the well-established case law surrounding the FDCPA, which is a self-enforcing statute.   As a practical matter, we believe it is obvious that such a defense, were it available, would inject too much uncertainty into the adjudication of FDCPA claims.  The FDCPA is, after all, a strict liability statute.  It is designed to be remedial and self-enforcing, and is designed to benefit consumers that wish to assert those rights.   Naturally, then, attorneys may assist consumers in carrying out this directive.   This sentiment permeates the case law and virtually every publication on the matter.   Indeed, there are many decisions and publications that disparage FDCPA attorneys for generating such lawsuits, however, it is well known that it is not illegal.   The prevailing wisdom of Congress and appellate courts seems to be that it is a necessary evil, tolerated as a mechanism to regulate and/or weed out would-be or actual predatory debt collectors.

Circuit Courts have roundly rejected this notion of 'entrapment' or 'inducement,' finding time and time again that the unclean hands affirmative defense regarding 1692e(8) violations is inappropriate. *See Dixon v. RJM Acquisitions, LLC*, 640 F. App'x 793 (10th Cir. 2016); *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010); *see also Francisco v. Midland Funding, LLC*, Case No. 17 C 6872, 7 (N.D. Ill. Feb. 8, 2019) (holding that that even if the consumer and his or

her attorney knowingly contrived a Fair Debt Collection Practices Act (FDCPA) violation, the debt collector is not entitled to a defense under the "unclean hands" doctrine). Neither this Court nor the Defendant cite any case law that would support such an assumption. Indeed, doing so would allow Courts disregard this plain and strict liability statute, and instead be constrained to policing language, ever investigating whether *additional* language is "pseudo-philosophical musings and non sequiturs… 'nonsensical' or 'fluff'" and thereby obviating a creditor's duty to regard a clear dispute under the FDCPA. *See* ECF No. 28. To conclude otherwise would inevitably mean that consumers are limited in the number and/or order of words when communicating a dispute. *See Jones v. Portfolio Recovery Assocs., LLC*, No. 1:16-CV-572-RP, 2017 WL 7052288, at *4 (W.D. Tex. Aug. 16, 2017) (holding that "It cannot be the case that merely including additional language renders a dispute invalid"). **Remember, consumers are *supposed to* dispute debts in writing under the FDCPA.** *See* 15 U.S.C. § 1692e(8).   It seems to us that such an analysis is untenable, contrary to the purpose of the FDCPA, and notions of freedom of speech.  In this context, there really can be no standard or prohibition against being long winded, whimsical, or nonsensical.  A dispute is a dispute, regardless of what language accompanies it.

The only way the 1692e(8) dispute letters give rise to a violation is through a lack of due diligence, *i.e. not reading the letter*, *or not honoring the letter based on the perception that it is from an unsophisticated consumer*, which is of course what is what the lawyers expected might occur in some cases.  The lawyers here gleaned this knowledge, in part, from the CFPB Consent Order entered exactly one year ago. *CFPB v. Portfolio Recovery Assocs., LLC*, No. 2:23-cv-110 (E.D. Va. Apr. 13, 2023), ECF No. 10.

This Honorable Court, in proffering its view that the 1692e(8) letter may have "entrapped" the Defendant, does not cite to caselaw, or statute, or either of the CFPB consent orders against

Defendant, instead the Court cites to one line from Plaintiffs' representation agreement(s). It is no crime or folly to advise a client that a defendant may not conduct due diligence, especially when the Federal Government has repeatedly alleged the same. Again, the consumer and debt collector relationship is adversarial by nature. We believe it is not improper to advise a consumer that we expect a debt collector may, with some level of statistical certainty, fail to conduct due diligence in this regard. Instead, we believe that such advice is accurate and savvy in this context, even if not the most dignified or sophisticated area of law. All the same, it is a valuable service, in demand, and created by Congress.

Of course, there are other lines in the representation agreement: "We will work towards repairing your credit score, investigating these Creditors, and pursue the necessary remedies to rectify any inaccuracies on your credit report," "It is our sincere belief that this effort is an integral part of our commitment to securing a favorable outcome for your overall financial well-being,"

Less than 25% of the dispute letters sent by J.P Ward & Associates result in a violation of the FDCPA. Meaning, more than 75% of the time, the disputes are honored or debts are completely removed from the clients' credit history which provides a great deal of financial benefit to the consumer. In comparison, the Plaintiff in *Huebner* was motivated to file a FDCPA complaint 100% of the time, even where no violation occurred. In reality, J.P. Ward & Associates only goal in the consumer debt practice is to help clients defend against creditor lawsuits, exercise their rights under the applicable statutory law, and reduce the amount of crushing consumer debt that plagues so many citizens of this Commonwealth. The firm understands that it will capture a certain number of lawsuits and reap financial rewards as part of this process. It is a modest profit, and has not been tested to a large extent, in large part due to the interruption caused by this inquiry.

14

To be clear, no one at J.P. Ward & Associates "entrapped" the Defendant by anticipating that it would not honor the dispute letters.   Nor did anyone "induce" Defendant corporation into disregarding disputes, which they know well that they must honor. Indeed, they have not claimed that we have committed misconduct.   At bottom: *We sent a dispute letter*. A dispute letter that every consumer in the United States has a statutory right to send and seek legal recourse should the dispute not be honored. Any violation committed by Defendant thereafter is a failure attributable to their practices, not some impermissible tactics designed by Plaintiffs' Counsel.  The conduct is not properly sanctionable under Rule 11.

**D.  There was no improper purpose in filing the complaints under Rule 11.**

Rule 11 states that when filing a paper, an attorney certifies that "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).As stated in Plaintiffs' prior briefs, and described *Supra*, the claims were not presented for an improper purpose. Each and every element of a 1692e(8) violation was alleged and supported by genuine evidence. These filings were not to unduly delay legal proceedings. Quite the opposite in fact. It is always a goal at J.P. Ward & Associates to resolve FDCPA lawsuits in a timely fashion, nor does anything on the record or as alleged by this Honorable Court suggest otherwise. Also, there is no allegation or indication from the record that the Complaints were filed to needlessly increase the costs of litigation. Defendants are no doubt aware of such greedy practices within the FDCPA industry and further aware that J.P. Ward & Associates does not engage in such practices.

That only leaves considering whether the Complaints were filed with an intent to harass the Defendant. Again, the only motivation in filing these complaints was to prosecute a valid 1692e(8) violation. Indeed, regarding the 1692e(8) claim, this Honorable Court has even

15

recognized that "nestled within was an assertion that may be interpreted as disputing the validity of the debt." *See* ECF No. 28. **This finding alone indicates that the Court acknowledges that the factual contentions asserted in the complaints were supported by evidence, nonfrivolous, and not presented for any improper purpose**. See Fed. R. Civ. P. 11(b)(1)-(3).

Furthermore, J.P. Ward & Associates had experience in litigating similar cases with other credit repair agencies without any allegations from Defense Counsel or Courts as to any impropriety. Even further, and far more importantly, J.P. Ward & Associates settled several cases with the Defendant in identical litigation. In the context of an FDCPA claim, the United States Supreme Court has ruled that "If the plaintiff obtains a favorable judgment *or a settlement*, then by definition the suit will not have been brought in bad faith." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 618 (2010) (emphasis added) (citing *Emanuel v. American Credit Exch.,* 870 F.2d 805, 809 (C.A.2 1989) (FDCPA defendant's "claim for malicious prosecution cannot succeed unless the action subject of the claim is unsuccessful")).

Merely exercising our clients' statutory rights to achieve a favorable settlement is not equivalent to bad faith or some improper purpose. A consumer has a right under the FDCPA to dispute debts. In fact, it would be hard to imagine a circumstance where the prospect of financial gain or a lawsuit would not enter the mind of a consumer who possesses an even passing familiarity with the Act.

In a case where the Plaintiff was expelled from a union and subsequently filed suit, the Defendants argued that the statutory claims were filed in bad faith as the Plaintiff was motivated by his political ambitions within the union. *Hall v. Cole*, 412 U.S. 1 (1973).  There, the Supreme Court held that "we can hardly accept the proposition that the exercise of that [statutory] right is tantamount to 'bad faith.'" *Hall v. Cole*, 412 U.S. 1, 14 (1973) (*citing Yablonski v. United Mine*

*Workers of America*, 466 F.2d, at 430—431) Again, regardless of this Court's perception that these dispute letters are somehow unfair, none of the actions taken by Plaintiffs' Attorneys are sanctionable under Rule 11 as the claims were meritorious, not intended to delay judicial proceedings or drum up attorneys' fees, and not intended to harass the Defendant.

**E.  Under Rule 11, creativity is a consideration.**

The Fifth Circuit found that Rule 11 sanctions were not permissible where Plaintiffs' Attorneys engaged in nearly identical practices. *See Tejero v. Portfolio Recovery Assocs., LLC,* 955 F.3d 453, 461 (5th Cir. 2020). ("[M]isapplication of Rule 11 can chill counsel's enthusiasm and stifle the creativity of litigants in purs[u]ing novel factual or legal theories, contrary to the intent of its framers" (quotation omitted)). Creative application of the law in good faith is not sufficient for an issuance of sanctions under Rule 11. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987).While we recognize that the practices employed in these matters may be novel in this jurisdiction, the same have been widely accepted in multiple Circuits. Again, this Court may disagree with or find unsavory Plaintiffs' position, however "a district court's disagreement with the merits of a position asserted in good faith by counsel cannot serve as the basis for sanctions." *Dawson v. United States*, 68 F.3d 886, 896 (5th Cir. 1995).

The FDCPA is a remedial statute, *Conboy v. United States Small Bus. Admin.*, 992 F.3d 153, 160 (3d Cir. 2021). The Third Circuit has reasoned that "Congress observed that '[e]xisting laws and procedures' enacted to remedy the injuries occasioned by abusive debt collectors 'are inadequate to protect consumers.'" *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citing 15 U.S.C. § 1692(b)). Congress intended to incentivize law firms like J.P. Ward & Associates to strategy and assist consumers in enforcing the FDCPA, to further societal good. Congress created a mechanism to encourage FDCPA actions in furtherance of the public interest.

Congress intended for the FDCPA to be self-enforcing. *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004).; *see also Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) (The FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as **private attorneys general**")(emphasis added).

Plaintiffs' Counsels practices are a creative good faith application of the FDCPA. Plaintiffs' Counsel has presented extensive statutory caselaw supporting their practices and demonstrated extensive foresight and experience in establishing such practices. Furthermore, the FDCPA was specifically designed to encourage such creative application of the Act by private attorneys. Therefore, sanctions under Rule 11 are not suitable for the conduct alleged by this Honorable Court. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987)(*citing Pawlowske v. Chrysler Corp.,* 623 F.Supp. 569, 573 (N.D.Ill.1985)(holding "The creativity must be in service of a good faith application of the law or at least a good faith request for a change in the law.")).

### F. Allegations of ethical misconduct.

Rule 11 does require "a continuing duty on counsel to make amendments based on knowledge ascertained after filing are not consistent with the Rule." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987)(*citing Oliveri v. Thompson,* 803 F.2d 1265, 1274 (2d Cir.1986). *Accord Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.,* 809 F.2d 451, 454 (7th Cir.1987)). It is maintained by Plaintiffs' counsel, as well as ethics counsel, that the Amended Complaints filed in each case affirmatively disclosing the authorship of the dispute letter is consistent both with ethical obligations of candor as well as Rule 11.

Mere moments ago, Counsel received notice from Chief Judge Hornak that the matter was referred to the Pennsylvania Office of Disciplinary Counsel. (See attached as Exhibit A, "The Referral Letter"). In the Referral Letter, Chief Judge Hornak noted that, separately from these

instant sanctions proceedings, "this Court will not further initiate or process disciplinary actions in this Court relative to the Attorneys' general admission to the Bar of this Court, or their ability to practice in this Court." Since the Western District Court is not pursuing such ethical remedies, leaving the decision to the Disciplinary Board, Chief Judge Hornak requested that "any efforts that can be implemented to permit ODC to arrive at a decision as expeditiously as possible would be greatly appreciated by the Court."

We have nothing further to add to what Attorney Ryan James, ethics counsel, has already stated in his brief about this Court's allegations of ethical misconduct: No ethical misconduct occurred, and there is a separate process currently underway with the Pennsylvania Office of Disciplinary Counsel to determine the issue.

## IV.  CONCLUSION

It is understandable that this Honorable Court inquired into the propriety of the letters, to some extent, in the above captioned cases. Since that time, J.P. Ward & Associates has spent considerable staff-hours and financial expense in addressing this Court's concerns.  We believe we have more than adequately addressed those concerns.  We respectfully request that this Rule 11 inquiry conclude without further proceedings.

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: April 26, 2024                          by:  _/s/ Travis A. Gordon_____
                                                    Travis A. Gordon (Pa. I.D. No. 328314)
                                                    Joshua P. Ward (Pa. I.D. No. 320347)

                                                    J.P. Ward & Associates, LLC
                                                    The Rubicon Building
                                                    201 South Highland Avenue
                                                    Suite 201
                                                    Pittsburgh, PA 15206
                                                    (412) 545-3016
                                                    tgordon@jpward.com

                                                    *Counsel for Plaintiff*