IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT SOFALY, | : |
| Plaintiff, | : |
| v. | : CASE NO. 2:23-cv-02018-CB |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | : |
| Defendant. | : |

-----------------------------------------------------------------------------------------------------------------

| | |
|---|---|
| DAMIEN MALCOLM, | : |
| Plaintiff, | : |
| v. | : CASE NO. 2:24-cv-00053-CB |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | : |
| Defendant. | : |

**DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC'S REPLY TO RESPONSE TO ORDER TO SHOW CAUSE**

Pursuant to the Court's April 29, 2024 Order (ECF 17)[1], Defendant Portfolio Recovery Associates, LLC ("PRA") respectfully submits this Reply to Plaintiffs' Brief in Response to Rule to Show Cause.

---

[1] All citations to docketed materials refer to the docket numbers assigned in *Malcolm v. Portfolio Recovery Associates, LLC*, 2:24-cv-00053-CB, unless otherwise noted.

1

## I. INTRODUCTION

On April 10, 2024, the Court ordered Plaintiffs Robert Sofaly and Damien Malcolm to show cause why sanctions should not be entered against them in each of the above-referenced matters. ECF 15. Citing their counsel's "scheme" to entrap or induce technical violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, the Court ordered Plaintiffs to show cause by April 26, 2024. *Id*. The Court thereafter ordered PRA to file a reply to Plaintiffs' response by May 6, 2024. ECF 17.

Counsel's February 8, 2024 disclosure at the Rule 16 conference—that his office had drafted and sent the *Sofaly* and *Malcolm* letters to PRA—was the first time PRA and its attorneys learned of counsel's practice. ECF 10, Transcript of Proceedings, 54:9-12. The Court stayed both matters two weeks later. ECF 9. The sum total of PRA's knowledge of these letters comes from the testimony given during the February 20, 2024 hearing, the information Plaintiffs' counsel provided by letter to the Court prior to the hearing, and the briefing filed after the hearing. Its information is thus limited, but even the limited information of record in this case leads PRA to respectfully disagree with Plaintiffs' response to the Court's Order to Show Cause. Plaintiffs misinterpret, and misapply, Rule 11. They misinterpret and misrepresent the holdings of the case law on which they rely. They cite PRA's silence on their conduct as proof of its propriety, even though PRA has not been asked by the Court to state an opinion until its most recent Order. ECF 17. And PRA submits that, based on the information known to it, the conduct which culminated in the transmission of the *Sofaly* and *Malcolm* letters—and the many others like them—is unethical, contrary to the FDCPA's stated aims, and warrants the imposition of sanctions.

II.     **MISINTERPRETATION AND MISAPPLICATION OF RULE 11.**

Plaintiffs argue that Rule 11 applies only to filed papers, not to pre-filing conduct. ECF 16, p. 7. This is wrong both as a matter of law and as a matter of practicality. Plaintiffs' narrow reading of Rule 11 is squarely at odds with the Notes of Advisory Committee on Rules concerning the 1993 updates to the Rule:

> *Subdivisions (b) and (c).* **These subdivisions restate the provisions requiring attorneys and pro se litigants to conduct a reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents, and prescribing sanctions for violation of these obligations.** The revision in part expands the responsibilities of litigants to the court, while providing greater constraints and flexibility in dealing with infractions of the rule. **The rule continues to require litigants to "stop-and-think" before initially making legal or factual contentions.** It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention.
>
> The rule applies only to assertions contained in papers filed with or submitted to the court. It does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection. **However, a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.** For example, an attorney who during a pretrial conference insists on a claim or defense should be viewed as "presenting to the court" that contention and would be subject to the obligations of subdivision (b) measured as of that time. Similarly, if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court (whether as claims, defenses, or in disputes regarding removal or remand), it would be

3

> viewed as "presenting"—and hence certifying to the district court under Rule 11—those allegations.

Fed R. Civ. P. 11, Notes of Advisory Committee on Rules—1993 Amendment. (Emphasis added). Moreover, as a practical matter, any "reasonable inquiry" into the claims presented in a complaint necessarily occurs *before* the complaint is filed, not afterwards. As such, a party and/or their counsel's pre-filing conduct cannot be divorced from the resulting "pleading, written motion, or other paper" resulting in the imposition of Rule 11 sanctions.

Plaintiffs also read Rule 11 too narrowly by focusing on the *filing* of a pleading, written motion or other paper. Rule 11(b) also applies to "later advocating for" a pleading, written motion or other paper whose factual contentions lack evidentiary support or is presented for an improper purpose, such as to induce PRA into offering a small monetary settlement. Fed. R. Civ. P. 11(b) and (b)(1). Plaintiffs *continue* to "advocate for" their improper conduct, insisting that case law and the Rules of Professional Conduct somehow allow for attorneys to send letters containing false statements, purportedly signed by their clients, to PRA for the purpose of creating litigation for their own gain. From their first correspondence to the Court prior to the February 20, 2024 hearing to their response to the Court's Order to Show Cause, Plaintiffs insist their conduct is not only commonplace[2] but legally sound, characterizing it as "a necessary evil, tolerated as a mechanism

---

[2] On several occasions during this proceeding, Plaintiffs have commented that credit repair organizations engage in similar (and in some instances, identical) conduct, presumably to illustrate that such tactics are common and accepted as part of the credit repair industry. *See, e.g.,* ECF 10, Transcript of Proceedings, 27:2-5 (describing how a CRO would send letters, yield the intended FDCPA violation, and then bring it to Plaintiffs' counsel for prosecution); 31:6-8 (describing how counsel "got the idea from other credit repair organizations that have done so with varying degrees of success). PRA respectfully submits that this practice is not proper whether done by a credit repair organization or by attorneys providing credit repair services. Among other things, the Credit Repair Organizations Act, 15 U.S.C. § 1679b(a)(4) ("CROA") prohibits entities offering credit repair services from engaging, directly or indirectly, in any practice which "constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection

to regulate and/or weed out would-be or actual predatory debt collectors." ECF 16, p. 13. PRA is not aware of any authority, from any source, suggesting that attorneys can intentionally cause violations of the FDCPA, then profit from them.

All that said, it bears stressing that even if the Court were to limit its review of this matter to beginning at the time the complaints were filed, Rule 11(b) remains an issue. Both complaints make false representations of fact, which their proposed amendments [3] do not cure. Both complaints still rest on, and incorporate, the letters prepared by counsel and designed to appear as though they came from the plaintiffs themselves. And both Plaintiffs, through their counsel, continue to insist that agency principles allow them to do this, apparently believing that the relationship between a principal and its agent allows the agent to do anything, up to and including falsifying documents and signing them in someone else's name, as long as they have the principal's permission to do it. *See*, *e.g.*, ECF 10, Transcript of Proceedings, 44:11-12 (testifying that because counsel had "agency" or permission to draft and sign a letter as though it was prepared and sent by a client, the statements in the letter are not false). Put differently, the existence of an agency relationship does not transform a false statement into a true one. And in fact, as the Court's hearing

---

with the offer or sale of the services of the credit repair organization." The creation and transmission of false "dispute" letters for the purpose of deceiving PRA into committing a violation of the FDCPA is improper whether sent by an attorney or not, and runs contrary to the plain language of CROA.

[3] Mr. Malcolm filed an amended complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1) on February 14, 2024. ECF 5. The original complaint alleged that Mr. Malcolm sent PRA the letter at issue. The amended complaint alleges that Mr. Malcolm "retained J.P. Ward & Associates, LLC's Credit Auditing and Repair Services," and that the firm was "fully authorized to draft and send a letter… on behalf of Damien Malcolm to Portfolio Recovery Associates." *Cf.* ECF 1-2, ¶¶ 5-6 *with* ECF 5, ¶¶ 5-6. But J.P. Ward & Associates, LLC did *not* "draft and send a letter… on behalf of Damien Malcolm to Portfolio Recovery Associates" as the amended complaint alleges; instead, they sent a letter to PRA designed to appear as though it came from Mr. Malcolm himself, complete with signature and personal identifying information. The proposed amended complaint Mr. Sofaly sought leave to file contains the same proposed amended allegations.

drew to a close, counsel *finally* admitted that the language of the letter was false—counsel qualified the admission, claiming that "a lot of the sentiment [in the letter] is what a lot of our clients feel generally, but if you were to say, you know, specifically did I have a conversation with the client and these were their exact words, in that sense, you know, it's not true." *Id*. at 52:19-23.

In the concluding pages of their brief, Plaintiffs argue that "creativity is a consideration" in determining whether to apply Rule 11 to an attorney's conduct. ECF 16, p. 18. Citing to Third Circuit precedent and suggesting this practice has already been vetted and approved by other Circuit Courts of Appeals, they claim that "Creative application **of the law in good faith** is not sufficient for an issuance of sanctions under Rule 11." *Id*. Their false insistence that practices such as theirs "have been widely accepted in multiple Circuits" is addressed more fully below. For Rule 11 purposes, even generously construing counsel's practice as "creative," such "creativity" has its limits. The Third Circuit cautions that "distortion of a statute is 'precisely the sort of creativity Rule 11 should chill.'" *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987). Counsel's practice—purposely and falsely representing to PRA that a nonsensical letter is from a consumer, purposely making the single sentence that might possibly be called a "dispute" as ambiguous as possible, and purposely employing these tactics to cause, and then gain financially from, an FDCPA violation—is not "creativity." It is statutory distortion. Plaintiffs and their counsel are weaponizing the FDCPA in a way Congress not only never intended, but explicitly prohibited. 15 U.S.C. § 1692k(a)(3) prohibits suits brought in bad faith and for the purpose of harassment, which is exactly what Plaintiffs have done here. Counsel's conduct is not creative; it is distortive. Rule 11's "creativity" considerations are not present here.

### III. MISINTERPRETATIONS AND MISAPPLICATIONS OF CASE LAW.

To backstop their argument that counsel's conduct is routine and "tolerated" as part of the FDCPA's remedial scheme, Plaintiffs present several cases as either supportive of their fabrication of letters, supportive of their argument that sanctions are not warranted, or both. But these cases do not say what Plaintiffs claim they do.

*Huebner v. Midland Credit Management, Inc.*

In its Order to Show Cause, the Court references *Huebner v. Midland Credit Management, Inc.*, 85 F. Supp.3d 672 (E.D.N.Y. 2015). ECF 15, p. 2. In their briefing, Plaintiffs argue that *Huebner* cuts *against* the imposition of Rule 11 sanctions in this case. Their explanation contains a theme that has become common in this case—because the source or means of a dispute does not matter (in their view), these matters are distinguishable from *Huebner* in that the *Sofaly* and *Malcolm* letters contained "legitimate" disputes, while the *Huebner* claim was fabricated in its entirety.

Just as Mr. Huebner's claims were the result of "a deliberate and transparent attempt by a sophisticated debtor to entrap a collection company into a technical violation," *Huebner*, 85 F. Supp.3d at 673, so too are Plaintiffs'. Their claims are the result of a premeditated, deliberate and transparent attempt by their attorneys and their staff to trick PRA into violating the FDCPA. Counsel's engagement letter explicitly says this. ECF 8 (filed under seal) at p. 9. Plaintiffs and their attorneys did not merely "anticipate" a violation of the statute. ECF 16 at p. 12. They intentionally, and with forethought, created a program designed to *cause* a violation of the statute, to generate profits for their own gain at the expense of PRA (and numerous others). *Huebner* does not soften the impropriety of this conduct.

7

### Brady v. Credit Recovery, Inc.

Plaintiffs cite to *Brady* as one opinion of many, from courts across the country, "approving of this business model to assist consumers in disputing debts and audit for e(8) violations." ECF 16, p. 7. *Brady* is silent as to the conduct at issue in this case. *Brady* questioned whether 15 U.S.C. § 1692e(8) requires a *written* dispute and nothing more. *Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998) ("This case thus turns on the narrow question of statutory construction: Should § 1692e(8) of the FDCPA—which on its face does not impose a writing requirement—be read to impose a writing requirement on a consumer who wishes to dispute a debt?"). *Brady*'s attorney did not draft a letter, sign his name, posture a 1692e(8) violation, or engage in any of the conduct to which Plaintiffs' attorneys have testified in these cases. The facts of the case do not support the statement that *Brady* somehow signs off on such conduct as acceptable, whether legally or ethically.

### Evans v. Portfolio Recovery Associates, LLC

Throughout this matter, *Evans v. Portfolio Recovery Associates, LLC*, 889 F.3d 337 (7th Cir. 2018) has shared center stage with *Tejero v. Portfolio Recovery Associates, LLC* as dispositive of the Court's inquiry into the propriety of Plaintiffs' counsel's conduct. Plaintiffs state that if called upon to do so, the Third Circuit would "adopt" the holdings of these two matters which, they suggest, would further justify and approve of their conduct. ECF 16, p. 6. But as with *Brady*, and contrary to Plaintiffs' express representation, *Evans* does not approve of the conduct at issue. In *Evans*, a volunteer attorney from the Debtor's Legal Clinic faxed substantively identical letters to PRA. *Evans*, 889 F.3d at 342-343. One paragraph of the letter stated, "The client regrets not being able to pay, however, at this time they are insolvent, as their monthly expenses exceed the amount of income they receive, and the amount reported is not accurate. If their circumstances

8

should change, we will be in touch." *Id*. at 342. PRA read the letter as communicating a notice of representation by counsel, but not a dispute. *Id*. at 343. At issue on appeal was whether PRA was correct in its interpretation. The Seventh Circuit was neither presented with a record showing conduct such as that at issue in these cases nor asked to opine on the propriety of such conduct. It never "approved of" the type of business model counsel employed here. Nor could it—the faxes PRA received, unlike the "nonsensical" letters at issue in this case, were clearly from the consumers' counsel. *Evans* says nothing of counsel creating mass-mailed templates consisting of nonsense, signing the names of the consumers, and pivoting to the FDCPA when their "scheme" works as intended.

### *Tejero v. Portfolio Recovery Associates, LLC*

Like *Brady* and *Evans*, Plaintiffs present *Tejero v. Portfolio Recovery Associates, LLC*, 955 F.3d 453 (5th Cir. 2020) as "proof" that attorneys can posture FDCPA claims for the purpose of later benefitting from them, without running afoul of any legal or ethical considerations. Again, Plaintiffs are wrong in both their interpretation and presentation of the case. At issue in *Tejero* was the district court's award of sanctions under Rule 11 to PRA's counsel, which were awarded in part because the district court considered the consumer's letter to PRA to be "a bad faith attempt to use 'ambiguously worded' language to 'expose [] debt collectors to [FDCPA] liability.'" *Tejero*, 955 F.3d at 460. The district court's award was reversed for several reasons, but chief among them was the absence of any basis in fact for the conclusions drawn by the court. The district court awarded sanctions under Rule 11 *sua sponte*, without conducting any hearings and without issuing an Order to Show Cause. *Id*. at 460-461. The Fifth Circuit concluded that the district court's decision was improperly based on "subjective suspicion" rather than objective facts. *Id*. at 460. Once again, the letter at issue in *Tejero* was sent *for* Tejero *through* his counsel, not by counsel

9

pretending to be Tejero. And once again, at no point did the *Tejero* court sign off on or approve of such a practice, because it was not asked to. Plaintiffs' claim that this conduct is widespread, and approved by multiple courts, is wrong. Not one of the cases cited in Plaintiffs' briefing holds that attorneys may misrepresent the source and origins of a letter, and sue on the resulting violation, with impunity.

### *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*

At various points throughout both the February 20, 2024 hearing and the briefing that followed, Plaintiffs' counsel raised other matters they have previously litigated—some involving PRA, some in which PRA's undersigned counsel represented another defendant in a similar claim. *See, e.g.,* ECF 10, Transcript of Proceedings, 34:12-15 ("Travis prosecuted those cases in court and went through discovery with some of the best lawyers that there are. Nobody ever accused Attorney Gordon or AIM or its clients of doing anything wrong whatsoever.") Counsel state that their firm has litigated "similar cases with other credit repair agencies without any allegations from Defense Counsel or Courts as to any impropriety." ECF 16, p. 17. They point to the settlement of some of those claims as "proof" that their conduct cannot be characterized as bad faith, and they reference *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA* as supportive of this contention. But the portion they quote comes from Justice Roberts' dissent, not from the Court's majority opinion, and thus is not binding here.

Even if it were, neither of the above-referenced matters has settled, so neither Plaintiff enjoys the cloak of "good faith" they clearly believe settlement would provide them. As noted above, neither PRA nor its undersigned counsel knew of the true origins of these letters until February 8, 2024, when Plaintiffs' attorneys divulged such information. As such, even if prior settlements of other cases were somehow relevant to the Court's inquiry here (and they are not),

such settlements cannot rationally be construed as either PRA or its counsel ratifying, approving of, or even ignoring the letters' genesis, let alone the legal or ethical propriety of such a practice. PRA cannot complain of an "impropriety" it does not know about, and neither can its counsel. Finally, and as has been true of *every* case Plaintiffs cite, the *Jerman* Court was neither asked to adjudicate nor actually opined on whether attorneys can create FDCPA claims from whole cloth, then profit from them.

## IV. PRA'S "SILENCE."

As noted above, during the hearing and throughout their briefing, Plaintiffs' attorneys claim that they have employed some version of their 1692e(8) "scheme" openly, and that neither PRA nor its attorneys (or other defendants represented by PRA's attorneys in similar cases) ever "challenged" them or "alleged wrongdoing or sanctionable conduct." ECF 16, p. 6; *see also* ECF 10, Transcript of Proceedings, 34:12-15, ECF 16, p. 4, 10. They go on to claim that PRA has been "silent" in the *Malcolm* and *Sofaly* matters, stating, "Instead, the Defendant has declined to take any advocacy position on the matter… It is worth noting that the Defendant was invited by this Honorable Court to state a position, and it declined." ECF 16, p. 6. They do not state, but strongly imply, that PRA and its counsel have known of counsel's conduct and have been tacitly complicit in their practice by declining to raise any objection or "challenge" them.

First, Plaintiffs are wrong when they claim that PRA was "invited… to state a position, and it declined." The Court has requested PRA's input, and that of its counsel, twice: once during the hearing, and once following Plaintiffs' response to its Order to Show Cause. ECF 10, Transcript of Proceedings, 54:1-55:12; ECF 17. On both occasions, PRA (and its counsel) responded.

Second, PRA's counsel testified under oath that both counsel and PRA learned that Plaintiffs' counsel had authored the letters on February 8, 2024 during the Rule 16 conference.

11

ECF 10, Transcript of Proceedings, 54:9-12. Up to that point, and as the parties' Joint Report of the Parties pursuant to Fed. R. Civ. P. 26(f) in the *Sofaly* matter clearly shows, PRA believed—based on its receipt of identical letters from unrelated consumers living all over Pennsylvania—that the letters were forms "prepared by a credit repair organization whose identity is presently unknown." See *Sofaly v. Portfolio Recovery Associates, LLC*, 23-2018, ECF 10, p. 2.

Perhaps most noteworthy, though, is Plaintiffs' repeated representation that opposing counsel and parties simply tolerate this practice. This is false. The Rule 26(f) Joint Report of the Parties in this matter makes PRA's position clear: it starts by pointing out that these form letters appear to be mass produced, to the point that two different plaintiffs in two different cases pending in the Western District had used the same letter. ECF 10, p. 2. PRA challenged the letter as constituting a "dispute" under 15 U.S.C. § 1692e(8), disagreeing with Plaintiffs' claim that the letter clearly or obviously disputes anything. *Id*. PRA affirmatively disclosed that it required discovery regarding, among other things, "the source of the 'dispute letter,'" and "her (sic) knowledge of and/or relationship with other individuals who have purportedly sent identical letters to PRA." *Id*. at p. 3. The *Sofaly* matter did not progress very far, and the *Malcolm* matter even less so—neither case has proceeded to discovery. But PRA's intention to conduct discovery into the source of these letters was clear from the beginning, and its position cannot possibly be characterized as "tolerant" of this practice.

V.   **PRA BELIEVES PLAINTIFFS' CONDUCT, AND THAT OF THEIR COUNSEL, IS SANCTIONABLE AND, AS TO COUNSEL, UNETHICAL.**

Respectfully, and based on the information known to it, PRA believes that both Plaintiffs and their counsel have engaged in conduct that violates Rule 11. PRA further believes that the Court has the inherent power to sanction such conduct, as PRA believes that counsel has engaged in unethical conduct.

*Sanctionable Conduct*

There was never a factual basis for the statements made in the letters. Mr. Hollingsworth testified the letters were drafted before the firm was even retained to represent Mr. Sofaly and Mr. Malcolm. ECF 10, Transcript of Proceedings, 24:13-17. Counsel directed their staff to use different letter templates, and staff did so, knowing that the names they were signing to the letters were not their names or that of their firm. They did so specifically for the purpose of inducing a violation of the FDCPA, believing that by hand-writing these letters, they could evade dispute-scanning software. *Id*. at 30:12-18. Plaintiffs each agreed to participate in this effort by giving "agency" to their counsel, under the apparent belief that to lie with permission is to lie with impunity. And when called to testify, both Plaintiffs doubled down on this "agency" concept, going so far as to (unconvincingly) testify that the sentiments expressed in these letters were their own—even though Mr. Sofaly agreed that it was "crazy" two different people would express identical opinions. *Id*. at 13:15-24. There was similarly never a factual basis for Plaintiffs to allege that *they* disputed their respective PRA accounts. Plaintiffs neither wrote nor signed the letters PRA received, so to the extent those letters could plausibly be called "disputes," they are not Plaintiffs' disputes. Their continued prosecution of their claims and their advocacy for this practice, despite the absence of *real* factual support, violates Rule 11(b).

Their conduct also violates Rule 11(b) because, quite frankly, Plaintiffs and their attorneys lied to PRA (and its counsel) and to the Court by presenting letters as being from Plaintiffs, when in fact they were from counsel. They later tried to explain it away, both through Plaintiffs' shaky testimony and their argument that "agency" permits such practices. But their practice is not as benign as they would have the Court believe. For example, under the FDCPA, PRA has an obligation to refrain from communicating with consumers who are represented by counsel. 15

U.S.C. § 1692c(c). By intentionally concealing counsel's involvement in these matters until FDCPA complaints are filed, counsel divests their clients of the FDCPA's protection against contact with represented consumers, all for the purpose of creating *another* type of statutory violation and filing a lawsuit. In this way, Plaintiffs and their counsel have been less than candid with the Court, in violation of Rule 11(b). And it goes without saying that taken as a whole, the purposes for which these matters were brought are anything but proper.

*Unethical Conduct*

Pennsylvania Rule of Professional Conduct 1.2(d) prohibits attorneys from counseling a client to engage, or assist a client in engaging in, conduct that the lawyer knows is criminal or fraudulent. Pa.R.P.C. 1.2(d). PRA respectfully submits attorneys licensed to practice in the Commonwealth should know the *prima facie* elements of fraud or misrepresentation under Pennsylvania law, and that this practice meets those elements. *See V-Tech Servs. v. Street*, 72 A.3d 270, 275 (PA Super. 2013) (identifying the elements of fraud or deceit). By engaging in this conduct, counsel does a gross disservice to consumers in need of *actual* consumer protection, by turning a well-intentioned statute into a game. Notably, although counsel endeavored to characterize the letters as communicating a real dispute notwithstanding the "fluff," it was *only* the "fluff" that Mr. Sofaly and Mr. Malcolm tried to justify. *See* ECF 10, Transcript of Proceedings, p. 6-14. Neither actually told the Court that they *actually* dispute their debts—they both explained they were "distressed" by their situations and felt creditors were "bugging" them, but neither discussed a dispute of an actual account. In fact, when asked by the Court to specifically identify the portions of the letter came from information he gave to his attorneys, Mr. Sofaly was unable to confidently identify anything. *Id*. at 13:1-20.  By continuing to insist this conduct is proper, widespread, accepted by the FDCPA "industry" and a necessary evil of the consumer protection

process, even in the face of Plaintiffs' inability to explain the contents of the letters, counsel run afoul of Comment 10 to the Rule, which prohibits attorneys from continuing to assist clients in conduct originally thought to be proper, but later revealed to be fraudulent.

Pennsylvania Rule of Professional Conduct 3.1 prohibits attorneys from bringing claims that lack a non-frivolous basis in law or fact. PRA respectfully submits that for the same reasons this "scheme" violates Rule 11(b), it also runs afoul of counsel's ethical obligations as well. Moreover, and given the reference to "creative" lawyering in the context of Rule 11, PRA respectfully submits that the practices which occurred here far overstep the limits established by the FDCPA, and thus conflict with Comment 1 to the Rule, which charges attorneys with knowing the proper limits of advocacy. Lies are lies; they are not advocacy.

Pennsylvania Rule of Professional Conduct 3.3(a) prohibits attorneys from making false statements of material fact or law to courts, and further prohibits lawyers from offering evidence the lawyer knows to be false. PRA respectfully submits Plaintiffs' counsel knew its representations about the letters were false, and they knowingly attached letters whose origins were materially misrepresented as exhibits to their pleadings. That counsel apparently had their clients' "permission" to do this is of no consequence—permission or not, counsel had an ethical obligation not to make such misrepresentations. Comments 2, 5 and 10 to the Rule prohibits attorneys from misleading the court "by false statements of law or fact or evidence that the lawyers know to be false," caution attorneys against introducing such false evidence even when their clients want them to, and explain what attorneys should do when they learn evidence is false. Here, although Plaintiffs and their counsel have all acknowledged that Plaintiffs neither wrote nor sent these letters, yet they all continue to champion the process as acceptable. The prohibitions against false

representations to the court played no role in the creation and promulgation of this business practice.

Pennsylvania Rule of Professional Conduct 3.4(b) prohibits attorneys from falsifying evidence as a matter of fairness to opposing parties and counsel. By their own testimony, counsel directed their staff to write these letters and affix their clients' "signatures" to them. By presenting them as having come from Plaintiffs themselves, counsel submitted falsified evidence to PRA for the purpose of creating lawsuits, and later submitted the same falsified evidence to the Court and to opposing counsel as part of the lawsuits they created.

Finally, Pennsylvania Rule of Professional Conduct 8.4(c) prohibits attorneys from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. PRA respectfully submits that as described at length above, Plaintiffs' counsel's conduct involves *all* of these.

                                Respectfully submitted,

                                **MESSER STRICKLER BURNTETTE, LTD.**

By:   */s/ Lauren M. Burnette*
       LAUREN M. BURNETTE, ESQUIRE
       Fed. Bar No. 29597
       12276 San Jose Blvd.
       Suite 718
       Jacksonville, FL 32223
       (904) 527-1172
       (904) 683-7353 (fax)
       lburnette@messerstrickler.com
       *Counsel for Defendant Portfolio Recovery Associates, LLC*

Dated: May 6, 2024

## CERTIFICATE OF SERVICE

I certify that on May 6, 2024, a true copy of the foregoing document was served on all counsel of record by electronic mail and/or U.S. Mail postage prepaid.

**MESSER STRICKLER BURNETTE, LTD.**

By:     */s/ Lauren M. Burnette*
LAUREN M. BURNETTE, ESQUIRE
Fed. Bar No. 29597
12276 San Jose Blvd.
Suite 718
Jacksonville, FL 32223
(904) 527-1172
(904) 683-7353 (fax)
lburnette@messerstrickler.com
*Counsel for Defendant Portfolio Recovery Associates, LLC*

Dated: May 6, 2024